**ALASKAN ARCTIC GAS PIPELINE COMPANY, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 236–79C.**

United States Claims Court.

Jan. 11, 1990.

William W. Brackett, Washington, D.C., for plaintiffs.

George M. Beasley III, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

This is an application for attorney fees, wherein Alaskan Arctic Gas Pipeline Company (Alaskan), Northern Border Pipeline Company (Northern), and Interstate Transmission Associates (Arctic) (ITA (Arctic)) seek an award of $218,735 pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (West Supp.1989). Said application was filed as a consequence of our decision in *Alaskan Arctic Gas Pipeline Co. v. United States*, 9 Cl.Ct. 723 (1986).[1] In that case Alaskan and Northern were two among five natural gas pipeline companies who sought a $4,053,528.42 refund of fees assessed, allegedly, illegally by the Department of the Interior (defendant) to cover application processing costs for a transcontinental natural gas pipeline rights-of-way access across federal lands. On the parties' cross-motions for summary judgment, we considered two major issues, *i.e.*, fees charged regarding costs incurred—prior to June 1, 1975, and after May 30, 1975—and thereafter granted the plaintiffs' cross-motion for summary judgment only to the extent that the defendant improperly assessed application processing fees for costs incurred *prior* to the effective date of applicable regulations (*i.e.*, June 1, 1975). We also granted the defen-

---

1. We observe that there were five plaintiffs represented in the original action, including Alaskan, Northern, *Pacific Gas Transmission (PGT)*, Pacific Gas and Electric Company (PG & E), and Pacific Interstate Transmission Company (PITC). In contrast, only three entities have joined in the subject attorney fees application.

We further note the conspicuous absence of ITA (Arctic) as a named plaintiff in the original litigation. The significance of these facts is more fully developed hereinafter, but in the meantime, the three fee applicants, Alaskan, Northern, and ITA Arctic, will be referred to collectively as the plaintiffs or fee applicants.

dant's cross-motion for summary judgment to the extent it properly assessed application processing fees for costs incurred after the effective date of the authorizing regulations under consideration in that case.

By the present EAJA application, plaintiffs now seek to recover attorney fees premised on the fact that the defendant's position in the original litigation, *i.e.*, it had the authority to assess fees for costs incurred prior to the effective date of valid implementing regulations, was not substantially justified. The defendant opposes the fee application on the grounds that plaintiffs have not carried their burden of establishing their eligibility to recover attorney fees under the EAJA. Further, and equally significant, the defendant alleges that the application is totally void of the requisite specificity contemplated by the EAJA, and that its position in the original action was, in fact, substantially justified. For the reasons stated herein, plaintiffs' application for attorney fees is hereby denied.

FACTS

Alaskan and Northern were two among a total of five gas companies included as named plaintiffs when we considered, in detail, the substantive merits of this case in *Alaskan Arctic Gas Pipeline Co. v. United States*, 9 Cl.Ct. 723 (1986). All five plaintiffs in that case were part of a consortium of gas pipeline companies organized for the purpose of constructing and operating portions of what is now known as the Trans-Alaska/Canada/United States pipeline, which was intended to deliver natural gas from the Prudhoe Bay oil and gas fields to markets in the lower 48 states. Alaskan was organized to build and operate that portion of the pipeline between Prudhoe Bay and the Alaska-Canada border. Northern Border was to build and operate a span from a point on the Montana-Canada border to a location in Pennsylvania. The consortium also included three other gas companies, *see* note 1, *supra*, who are not now requesting attorney fees. PGT was to build and operate a segment of pipeline from the Idaho-Canada border to the California-Oregon border.

PG & E was to build and operate a pipeline for the purpose of distributing gas in the state of California, from a connection point on the California-Oregon border. PITC was to build and operate a second pipeline from the Idaho-Canada border to the California-Oregon border.

The route upon which the consortium planned to construct the pipeline traversed federal, state, and private lands. Prior to initiating construction of the gas pipeline delivery system, the defendant required that each member of the consortium file an application for rights-of-way access across federal lands pursuant to the authority of the Independent Offices Appropriation Act (IOAA), 31 U.S.C. § 483a (1976), and the 1973 amendment to the Mineral Leasing Act (MLA), 30 U.S.C. § 185(*l*) (1976). Thus, beginning in 1975, defendant assessed application processing costs against each of the five consortium members, pursuant to the alleged authority of the IOAA, the 1973 amendment to the MLA, and the regulations which implemented these statutes on June 1, 1975, 43 C.F.R. § 2802.1-2 (1976). Consequently, the five-member pipeline consortium paid $4,053,528.42 in such processing costs, which it sought to recover by filing suit in this court. They asserted that the regulations, as applied, were illegal, beyond the statutory authority of the defendant, discriminatory, and resulted in fees which were disproportionately excessive and inaccurate. The defendant, in response, argued that it assessed the application processing costs in full and responsive conformity to its delegated authority under the IOAA, the MLA, and the implementing regulations.

On cross-motions for summary judgment, we granted the consortium's motion in part, to the extent the defendant exceeded its authority when it improperly assessed fees for application processing costs incurred *prior to June 1, 1975, i.e.,* the date on which the regulations implemented the statutory provisions authorizing such action under the IOAA and the 1973 amendment to the MLA. Relying on *Alyeska Pipeline Service Co. v. United States*, 224 Ct.Cl. 240, 624 F.2d 1005 (1980), we held that, if the IOAA and the 1973

amendment to the MLA were to be the sources of the defendant's authority to assess and recover application processing costs, that authority could only be exercised by the defendant pursuant to regulations in effect at the time the costs in issue were incurred. As a consequence, we rejected the defendant's hospitable construction of the holding in *Alyeska* and its assertion, based upon *Nevada Power Co. v. Watt,* 711 F.2d 913 (10th Cir.1983), and *Hannifin v. Morton,* 444 F.2d 200 (10th Cir.1971), that fees incurred *prior* to the effective date of the regulations could nevertheless be recovered through a retroactive application of the regulations. Thus, we held that the assessment of those fees incurred *prior* to the effective date of valid implementing regulations was an invalid exercise of authority by the defendant under both the IOAA and the 1973 amendment to the MLA.[2]

However, the consortium was only partially successful on the motion. We also granted the defendant's cross-motion for summary judgment with respect to the second major issue in the case, holding that the defendant was entitled to recover fees assessed for application processing costs incurred on and subsequent to the effective date of the regulations on June 1, 1975. With respect to this issue, we relied upon *Sohio Transportation Co. v. United States,* 766 F.2d 499 (Fed.Cir.1985), to reject the consortium's contention that the 1975 implementing regulations were invalid on their face. We also rejected an alternative argument raised by the consortium, with respect to which it contested the application of the regulations. As a result, we found that the assessments imposed upon the consortium by the defendant for certain *post* June 1, 1975 application processing costs were reasonable, non-excessive, and in full conformity with law and regulations.

**2.** Our decision was affirmed by the Court of Appeals for the Federal Circuit. *Alaskan Arctic Gas Pipeline Co. v. United States,* 831 F.2d 1043 (Fed.Cir.1987).

**3.** Our decision in *Alaskan Arctic* was rendered on March 27, 1986, after which the matter was remanded to the Department of the Interior,

In short, our decision on the cross-motions granted partial relief to each of the litigants. The cross-motion filed by the five gas companies was granted in part and denied in part. The defendant's cross-motion for summary judgment was similarly granted in part and denied in part. We stated in pertinent portions of that holding as follows:

> ... the court hereby (1) grants plaintiffs' motion for summary judgment to the extent plaintiffs have been charged fees relative to costs incurred *prior* to June 1, 1975; and concomitantly (2) grants defendant's motion for summary judgment with regard to the amount of those fees assessed relative to costs incurred *subsequent* to May 30, 1975....

*Alaskan Arctic,* 9 Cl.Ct. at 725 (emphasis in original).

As a consequence of the foregoing, the three plaintiffs herein filed this application for attorney fees on January 15, 1987, pursuant to the EAJA, 28 U.S.C. § 2412. Said application, seeking $218,735 in attorney fees, was filed within the 30–day requirement of 28 U.S.C. § 2412(d)(1)(B).[3] The application was, however, stayed pending appeal. The decision on the merits having been affirmed on October 20, 1987, *see Alaskan Arctic Gas Pipeline Co. v. United States,* 831 F.2d 1043 (Fed.Cir.1987), we now undertake a review of the EAJA fee application herein.

## CONTENTIONS OF THE PARTIES

### A. *Plaintiff*

In this EAJA fee application, counsel for the three fee applicants, Mr. William W. Brackett, alleges that each of the three applicants is entitled to recover legal expenses incurred in the prosecution of the foregoing issues on the merits. In the application for fees, Mr. Brackett asserts that:

> Bureau of Land Management, to determine the amount of damages. The parties to that action subsequently filed, on December 11, 1986, a stipulation for the entry of judgment in the amount of $1,729,270.91. Final judgment was thereafter entered on December 18, 1986.

1) each of the three plaintiffs named herein are parties within the contemplation of the EAJA, 28 U.S.C. § 2412;

2) at the time this proceeding was filed, the net worth of each did not exceed $7,000,000, nor did they have more than 500 employees;

3) judgment has been rendered in favor of the three plaintiffs; and

4) the position of the defendant was not substantially justified, in that fees for processing application costs were assessed without the regulatory authority required by statute.

As a consequence of these affirmations, the plaintiffs request an award of $218,735 in legal fees in accordance with the following statement attached to the fee application:

### STATEMENT OF LEGAL FEES
Period February, 1978 to January 14, 1987

WILLIAM W. BRACKETT
1152 hours at $155 = $178,560

ASSOCIATE TIME
121 hours at $75 = 9,075

LAW CLERK'S TIME
622 hours at $50 = 31,100

TOTAL $218,735.

Counsel for plaintiffs further avers that the $155 hourly rate charged, which is admittedly in excess of the EAJA $75 cap, *see* 28 U.S.C. § 2412(d)(2)(A)(ii) (West Supp. 1989), is justified here because, having served as an officer of one of the named plaintiffs and as a representative of the others, he had a unique knowledge of the facts in this case. Furthermore, counsel advanced the increased cost of living in the Washington, D.C. area in support of the $155 per hour rate claimed. Mr. Brackett offers nothing in support of the $75 hourly charge for associates other than an assertion that this figure is lower than the amount normally charged. As for the $50 hourly charge for law clerks, Mr. Brackett alleges that the claim is justified because he was able to reduce the amount of time and fees that would have been incurred by more expensive personnel. Finally, plaintiffs' counsel attached two affidavits to the application—the first in which he personally swore to the truth of those statements contained in the application itself, and the second in which counsel swore to the truth and accuracy of the statement of legal fees.

### B. *Defendant*

The defendant opposes the attorney fees application on four general grounds. First, the defendant questions whether any of the three fee applicants herein are eligible parties within the contemplation of the EAJA. It notes initially that three plaintiffs in the action on the merits, PGT, PG & E, and PITC, are not fee applicants here, and questions the reason for the omission of these parties. The defendant also contests the inclusion of ITA (Arctic) as a fee applicant in these EAJA proceedings, as it was never a plaintiff in the original action. Thus, according to the defendant, it is an uncontroverted fact that ITA (Arctic) was not a prevailing party and, as such, is ineligible to receive an award for attorney fees under the EAJA, 28 U.S.C. § 2412(d)(1)(B). More importantly, it was never a party on the merits. The defendant argues, in effect, that because ITA (Arctic) was a joint venture organized by PITC, then PITC is the real party in interest here.[4] Consequently, the defendant argues that it is PITC who must qualify as an eligible party under the EAJA and not ITA (Arctic). The defendant further asserts that the evidence offered in support of the fee application does not demonstrate whether any of the three applicants meet the net asset and employee limitations, $7,000,000 and 500,

4. In their response to the defendant's objections, the plaintiffs admitted that neither PGT, PG & E, nor PITC satisfied the requirements of 28 U.S.C. § 2412(d)(2)(B). Plaintiffs' Reply to Defendant's "Opposition to Plaintiffs' Application for Attorney Fees," "Contingent Action to Stay Proceedings" and "Motion to Stay Proceedings," p. 2. By the same response, the plaintiffs stated that ITA (Arctic) was structured as a joint venture between PITC and another entity, and that PITC was therefore the entity who would receive that portion of fees, if any, recovered by ITA (Arctic). *Id.*, p. 5.

respectively,[5] contained in 28 U.S.C. § 2412(d)(2)(B).

Secondly, the defendant contends that the plaintiffs have presented inadequate support for their fee application, as required by 28 U.S.C. § 2412(d)(1)(B) (West Supp.1989). According to the defendant, the plaintiffs' "Statement of Legal Fees" does not constitute an itemized, contemporaneous record of time expended sufficient to enable this court to determine the reasonableness of the hours or the rates sought by the plaintiffs. Thus, citing *Naprano Iron and Metal Co. v. United States*, 825 F.2d 403 (Fed.Cir.1987), and *St. Paul Fire & Marine Insurance Co. v. United States*, 4 Cl.Ct. 762 (1984), the defendant contends that the fee application should be denied for lack of specificity alone, without ever reaching the merits of whether its position in the original action was substantially justified.

Thirdly, the defendant argues that the application should be rejected for failure to show that the rates charged by counsel in this case were reasonable under 28 U.S.C. § 2412(d)(2)(A). It avers that the plaintiffs have made an inadequate showing that the rates were based upon prevailing market rates for the nature and quality of the services furnished. Specifically, the defendant contends that lead counsel here, Mr. Brackett, has not shown sufficient justification for charging $155 per hour. As such, even if the application were to be granted, the defendant argues that Mr. Brackett's rate should be reduced to comply with the $75 cap in 28 U.S.C. § 2412(d)(2)(A)(ii). Because of the same deficiency, by analogy, the defendant requests a reduction in the rate charged for associate time in a proportionate amount. Lastly, the defendant argues that the $50 hourly rate charged for law clerk time is without any basis under the EAJA. The defendant argues that under a strict con-

struction of the statute, the limited waiver of sovereign immunity under the EAJA requires us to either deny the recovery of any fees for law clerk time or limit any recovery to the actual salary that the firm paid the clerk. Moreover, the defendant also alleges that the application should be denied, or, if fees are awarded, reduced because after having succeeded on only one of the two major issues, the plaintiffs obtained only partial success in the original action.

Fourth, the defendant vigorously contends that, should the foregoing arguments be rejected, the fee application should be denied on the merits alone. It argues that its position in the action on the merits was substantially justified, and that an award of attorney fees under the EAJA would, therefore, be impermissible. In support of its contention on the reasonableness of its position, the defendant cites *Devine v. Sutermeister*, 733 F.2d 892 (Fed.Cir.1984). That case allegedly stands for the proposition that where the matter in dispute is an issue of first impression, and where the issue was subject to conflicting decisions in other circuits, the government *is* substantially justified if it chooses to litigate the issue here. Thus, the defendant asserts, *a fortiori*, that its position was substantially justified in that its interpretation of a legal issue never previously addressed by this court was in full conformity with decisions from other circuits.

## DISCUSSION

The EAJA, 28 U.S.C. § 2412, was promulgated by Congress in 1980 as an instrument to eliminate economic deterrents to justice, stemming from unreasonable governmental action, by allowing litigants to recover the cost of their legal fees for successful suits against the government. *Wall Industries, Inc. v. United States*, 15 Cl.Ct. 796, 801 (1988), *citing* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6, *reprinted*

---

5. The defendant initially raised this issue with respect to each of the three plaintiffs seeking fees by the subject application. In response, the plaintiffs submitted the federal income tax returns of Alaskan and Northern covering the taxable year during which the original action was filed. These submissions allegedly demon-

strate that neither had income in excess of the $7,000,000 limit, nor did they employ more than 500 individuals. No submissions were made for ITA (Arctic), but plaintiffs' counsel averred that it functioned through the use of contractors and did not exceed the eligibility limitations of the EAJA.

*in* 1980 U.S.Code Cong. & Admin.News 4953, 4984. In that context, there are four eligibility criteria which a litigant must meet in order to recover fees and costs under the EAJA. Therefore, before an applicant, such as plaintiffs here, can recover under this provision of the EAJA, *each* of the following four threshold eligibility requirements must be satisfied:

(i) the applicant must have been a prevailing party in the original action, 28 U.S.C. § 2412(d)(1)(A), (d)(1)(B);

(ii) the applicant must have "incurred" the cost of legal fees in that action, 28 U.S.C. § 2412(d)(1)(A);

(iii) the applicant must have a net worth of $7,000,000 or less if, as here, it is a business or organization, 28 U.S.C. § 2412(d)(2)(B); and

(iv) if, as here, the applicant is a business or organization, it must employ 500 or fewer persons, 28 U.S.C. § 2412(d)(2)(B).

*See, e.g., Wall Industries,* 15 Cl.Ct. at 801.

Upon the satisfaction of each of these four elements, an applicant would thereby be eligible to receive a fee award under the EAJA. Recovery of an award, on the other hand, may be denied, of course, in those cases where the government *is* able to demonstrate that its legal position was "substantially justified," or that special circumstances existed that would make a fee award unjust, 28 U.S.C. § 2412(d)(1)(B). *See Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (construing "substantial justification" to a sufficient degree that would satisfy a reasonable person). Additionally, recovery may also be denied where petitioner(s) fail to submit an "itemized statement" in support of the amount(s) sought. § 2412(d)(1)(B). We are, therefore, first required to examine the eligibility of each of the three fee applicants here, and thereafter address the issues of the legal sufficiency of the itemized statement and substantial justification.

### A. *Eligibility*

■ It is clear beyond cavil that ITA (Arctic) cannot satisfy even one of the aforementioned four EAJA threshold eligi-

bility requirements. ITA (Arctic) fails the first test because, quite simply, it cannot be viewed as a prevailing party without having been a plaintiff in the original action. Having summarily failed to qualify under this first requirement of the four-part eligibility test, generally it is unnecessary to go further. However, even if ITA (Arctic) could be considered a prevailing party, which we expressly hold it was not, it also fails on each of the remaining eligibility requirements. For example, there is no evidence that ITA (Arctic) actually incurred any legal fees whatsoever in connection with the proceedings on the merits. We find support for this conclusion in counsel's express admission that "Pacific Interstate [PITC] *is* the Plaintiff for recovery of the recoverable portion of ITA(A) fees." Pl. Reply, p. 5 (emphasis added). Thus, by plaintiffs' own admission, PITC is the real party in interest, not ITA (Arctic). To the extent the real party in interest *must* meet the eligibility requirements of the EAJA, *see Wall Industries,* 15 Cl.Ct. 803, 806, the application for fees by ITA (Arctic) must be deemed deficient. This is true because counsel has expressly stated that PITC, the real party in interest for those fees allocable to ITA (Arctic), was not a fee applicant for the specific reason that it was not eligible to recover attorney fees under the net asset and the employee limitations tests under the EAJA, 28 U.S.C. § 2412(d)(2)(B). Pl.Reply, p. 2.

■ With respect to Alaskan and Northern, we are required to carry our analysis somewhat further regarding the merits of their EAJA applications. This is so because they were indeed prevailing parties in the original action on the substantive merits, inasmuch as they were two of the five plaintiffs who prevailed on one of the two major issues decided in that case. They also appear to have met the EAJA net asset and employee limitations tests. By their reply to the defendant's opposition, counsel for Alaskan and Northern submitted federal income tax returns which tend to prove that both had a net worth of $7,000,000 or less and fewer than 500 employees at the time suit was filed in the original action. Nonetheless, we are con-

strained to hold that Alaskan and Northern cannot satisfy *all* four eligibility requirements. In our view, both Alaskan and Northern have wholly failed to demonstrate by any measure of credible and probative evidence that they "incurred"[6] the cost of legal fees in that action. This substantial defect is the result of the patent lack of specificity in the plaintiffs' fee application as a whole. For example, the bland statement of legal fees submitted by Mr. Brackett does not specify what portion of the claimed fees was in fact incurred by Alaskan, what portion was incurred by Northern, or what portion was incurred by the ineligible ITA (Arctic). More importantly, this statement does not specify whether any of the claimed fees incurred by the remaining ineligible plaintiffs (PGTC, PGEC, and PITC) in the original action were deleted from the lump sum now sought under the EAJA, or whether they continue to be included in the total claimed amount.

[4, 5] It is for this reason, among others, that parties seeking an award of attorney fees under the EAJA *must* submit "an *itemized statement* ... stating the actual time expended and the rate at which fees and other expenses are computed." 28 U.S.C. § 2412(d)(1)(B) (emphasis added). In other words, to carry that burden of making a prima facie showing, an applicant *must* submit "*contemporaneous records* of exact time spent on the case, by whom, their status and usual billing rates, as well as a breakdown of expenses such as the amounts spent copying documents, telephone bills, mail costs and any other expenditures related to the case." *Naprano Iron and Metal Co. v. United States,* 825 F.2d 403, 404 (Fed.Cir.1987) (emphasis added). In addition to the type of required records enumerated in *Naprano, supra,* we think it is implicit that applicants are also required to include a detailed itemization of what costs were incurred by *each applicant* in those cases where multiple parties are represented by one attorney or one firm. Moreover, we deem it to be

imperative that the characterization of the tasks are associated with the number of hours spent. Such an itemization is necessary not only for the purpose of determining the reasonableness of the hours and rates charged, *Naprano,* 825 F.2d at 404; *St. Paul Fire & Marine Insurance Co. v. United States,* 4 Cl.Ct. at 771, but to enable the determination of what legal fees were actually incurred by each applicant. "The statutory consent to fee awards requires specificity for an award to be made at all." *Naprano,* 825 F.2d at 405; *accord St. Paul Fire & Marine,* 4 Cl.Ct. at 771. Thus, the conclusion is inescapable that lack of specificity is a proper ground for rejecting the application, without the necessity of ever reaching the issue whether the government's position was substantially justified. *Naprano,* 825 F.2d at 405.

At bar, the plaintiffs' "Statement of Legal Fees," *supra,* does not come close to the level of specificity required by the EAJA and as enunciated in *Naprano, supra.* That statement, as prepared by and sworn to by Mr. Brackett as counsel to the five original plaintiffs and the three fee applicants here, is simply a generalized, bland, hospitable assertion divided into three lump sum categories. In short, it contains nothing more than a statement of the gross number of hours allegedly worked, the rates allegedly charged, the person performing the tasks, and the *gross* value of fees allegedly incurred by the fee applicants. Like the statement submitted in *Naprano,* we hold that "[s]uch a showing is [thoroughly] inadequate to support an award of attorneys' fees." *Naprano,* 825 F.2d at 404. We are constrained to do so because, from the statement submitted herein, we are unable to determine what proportion of the total fees, if any, were incurred by either Alaskan or Northern, or by anyone for that matter. In fact, no probative evidence was offered in support of the application to establish that either applicant assumed total responsibility to

---

**6.** *Webster's New Collegiate Dictionary* defines "incurred" to mean "to become liable or subject to; bring down on oneself." *See Wall Indus-* *tries,* 15 Cl.Ct. at 802–803, for an analysis of incurrence under the EAJA.

pay for all of the fees and other expenses incurred in the original suit.

More importantly, as counsel for these two applicants represented all five of the original plaintiffs, we are unable to determine what portion of the claimed fees, if any, were incurred by PG & E, PGT, or PITC, all of whom are ineligible applicants under the EAJA. Mr. Brackett has not even alleged that the costs incurred by those entities were removed from the attorney fees calculation submitted herein. It is entirely possible, if not probable, that a large portion of the claimed fees were actually incurred by one of the original plaintiffs not a party to this application. This is particularly true in view of the fact that all of the five original plaintiffs jointly litigated legal issues which had identical ramifications for each. In other words, it would appear that Mr. Brackett rendered the same legal service to all five as a group, not as five clients whose various burdens for attorney fees were subject to easily divisible calculation. The affidavits submitted by Mr. Brackett do not contain any information whatsoever to show who paid the legal fees, such as invoices or cancelled checks. "Such evidence, of course, would have been circumstantially probative on the issue of incurrence." *Wall Industries*, 15 Cl.Ct. at 802. Under these circumstances, it strains credulity to find that the legal fees claimed herein were incurred in the entirety by Alaskan and Northern only.[7] Plaintiffs have woefully failed to prove these operative facts, and this court is not inclined to conjecture. Consequently, we cannot award fees on the inadequate record presented here. *See Naprano*, 825 F.2d at 405 (court not required to reconstruct information that might support a fee award).

### B. *Substantial Justification*

■ While it is unnecessary to examine the merits of the plaintiffs' application, due to its patent lack of specificity, we never-

theless note in passing that the defendant's position in the original action appears to have been substantially justified under the EAJA. In the original action, the issue on which the plaintiffs ultimately prevailed was one of first impression in this court at the time suit was filed. Furthermore, the position taken by the defendant was arguably supported by judicial decisions in the Tenth Circuit. Even when the Federal Circuit rendered the decision upon which we ultimately relied, *Alyeska Pipeline Service Co. v. United States*, 224 Ct.Cl. 240, 624 F.2d 1005 (1980), the arguments raised by the defendant were not explicitly rejected. Under these circumstances, we find that the defendant's position in the original action was substantially justified so as to preclude an award under the EAJA. *See Devine v. Sutermeister*, 733 F.2d 892, 898 (Fed.Cir.1984) (position may be substantially justified on issues of first impression that were subject to conflicting judicial pronouncements in other circuits); *Gava v. United States*, 699 F.2d 1367, 1371 (Fed.Cir 1983) (the mere fact that the government loses on one of several issues, particularly one of first impression in this court, does not demonstrate a lack of substantial justification). We, therefore, conclude that, even if plaintiffs had been eligible to recover fees under the EAJA, such an award would have been precluded by the substantial justification of the defendant's arguments in the original action.

### CONCLUSION

The plaintiffs' application for attorney fees under 28 U.S.C. § 2412 is hereby DENIED. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

---

7. Such a conclusion is inescapable, particularly in view of the claimed right to reimbursement of legal fees by ITA (Arctic), who admittedly is not the real party in interest here. To the extent a portion of the gross fees claimed in the application are allocable to the ineligible PITC, as the real party in interest for ITA (Arctic), those fees are nonrecoverable. Thus, even if Alaskan and Northern were otherwise eligible under the EAJA, the lack of specificity in the application would prevent us from determining the proper amount of any such award.