**Loren Stephen LOOMIS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–1653C.

United States Court of Federal Claims.

Dec. 15, 2006.

David P. Sheldon, Washington, D.C., for plaintiff. Philip Sundel, and Raymond J. Toney, Washington, D.C., of counsel.

Paul G. Freeborne, U.S. Department of Justice, Civil Division, Federal Programs Branch, for defendant. With him on the briefs were Peter Keisler, Assistant Attorney General, Vincent M. Garvey, Deputy Branch Director, and Major Susan J. Burger, U.S. Army Litigation Division, of counsel.

## OPINION

BRUGGINK, Judge.

This is a military pay case in which plaintiff sought this court's review of decisions of the Army Board for the Correction of Military Records ("ABCMR"). Plaintiff had been discharged for homosexual conduct and conduct unbecoming an officer despite his request for the suspension of the Army's elimination proceedings against him. A suspension would have enabled him to accrue the 20 years of active service credit required for retirement. Before the ABCMR, he sought to set aside the discharge and the Under Other Than Honorable Conditions ("UOTHC") characterization of his discharge. The two decisions of the ABCMR upgraded plaintiff's discharge to "General, Under Honorable Conditions ('GUHC')," but denied an upward adjustment of his active federal service credit which would have permitted him to retire with twenty years of active federal service.

Before this court, plaintiff sought review of the decisions of the ABCMR. We granted plaintiff's motion for summary judgment in part, holding that plaintiff had a right to suspension of the Army Board of Inquiry ("BOI") elimination proceedings during the consideration of his request for retirement in lieu of elimination. *Loomis v. United States*, 68 Fed.Cl. 503 (2005). We also denied plaintiff's motion in part, specifically rejecting his argument that the military's sodomy prohibition, article 125 of the Uniform Code of Military Justice, and the Army's "Don't Ask, Don't Tell" ("DADT") policy should be held unconstitutional. *Id.* We awarded plaintiff a judgment in the amount of $241,801.00 in retirement pay with further retirement pay and benefits on a continuing basis. *Id.*

Pending now is plaintiff's motion for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2000). Plaintiff claims that he is entitled to an award of attorneys' fees and costs in the amount of $23,125.00. In support of his motion, plaintiff argues that: 1) he is a prevailing party for purposes of EAJA because plaintiff was awarded the very remedy he sought in bringing the lawsuit, namely, a finding that he had a right to have his elimination proceedings suspended pending the processing of his request for retirement in lieu of elimination; 2) the government's position on the suspension right was not substantially justified because the court found no support in the record for the government's position with respect to the suspension issue; and 3) the Army's position on the UOTHC characterization of plaintiff's discharge was not substantially justified because the ABCMR overturned it in its 2004 decision.

The government concedes that plaintiff is the prevailing party. However, the government argues that: 1) plaintiff is not eligible for an EAJA award because there is no record that he in fact incurred attorneys' fees himself and because he failed to provide contemporaneous evidence of the "status"[1] and the usual billing rates of his attorneys; 2) the

---

1. We assume that the government is referring to the status of employment and the position of the attorney, such as whether the attorney is a partner, an associate, or a contract employee.

government's position as a whole had a reasonable basis in fact and law; and 3) even if its position was not substantially justified, the award requested by plaintiff is excessive considering the limited degree of success plaintiff achieved.

The matter is fully briefed. Oral argument is deemed unnecessary. For the reasons set out below, we grant plaintiff's motion and award attorneys' fees in the amount of $23,125.00.

## BACKGROUND

The facts surrounding this case are set out in detail in this court's November 7, 2005 opinion. *Loomis,* 68 Fed.Cl. 503. A summary is given below.

On August 19, 1996, elimination proceedings against plaintiff, a former senior officer on active duty in the Army, were initiated based on the Army's DADT policy. At a BOI hearing held on December 16, 1996, it was recommended that plaintiff be discharged for homosexual conduct and conduct unbecoming an officer. Because of a finding that plaintiff's homosexual acts involved force, coercion or intimidation, an aggravating factor under Army regulations, the BOI also recommended that plaintiff's discharge be characterized as UOTHC.

Under Army Regulations ("AR") 600–8–24, para. 4–24, a soldier may request retirement once elimination proceedings are commenced if the request is properly styled as one for "retirement in lieu of elimination." Plaintiff requested retirement in various forms during the elimination proceedings. He first requested an early retirement in lieu of separation which allows soldiers to retire with less than 20 years of active service credit. When the request was denied, plaintiff then requested a voluntary retirement. This request was also returned without action due to ineligibility. Lastly, plaintiff requested retirement in lieu of elimination on May 12, 1997, with an effective date of July 23, 1997. This request was denied 30 days later by the chief of the Army Reserve on June 12, 1997.

Upon discharge, plaintiff filed an appeal of his elimination to the ABCMR on May 14, 1999. The board found that plaintiff's misconduct was sufficient to justify elimination. The board also upheld the Army's denial of plaintiff's May 1997 request for retirement in lieu of elimination. The board, however, upgraded plaintiff's discharge to GUHC due to a lack of aggravating factors. Plaintiff had argued that Army regulations required a 30–day suspension of his elimination proceedings until a decision was reached on the request for retirement. The board, however, held that the relevant regulations could not be used to allow plaintiff to accrue additional active duty service credit, and that, in any event, any error was harmless.

Upon plaintiff's second ABCMR appeal, the board denied plaintiff's request for 11 days of active service credit. The additional active service credit, according to plaintiff, would have made him eligible for a regular retirement prior to his separation from the Army. The board concluded that documents supplied by plaintiff in support of plaintiff's claim were insufficient to demonstrate his entitlement for additional service credit.

On November 7, 2005, we granted in part plaintiff's motion for judgment upon the administrative record with respect to his claim of a right to suspension of his elimination proceedings before the BOI pending consideration of his request for retirement in lieu of elimination. In other respects, plaintiff's motion for judgment on the record was denied. We specifically rejected plaintiff's argument that the characterization of his discharge should be set aside. We held that the military's sodomy prohibition, article 125 of the Uniform Code of Military Justice, and the Army's DADT policy do not violate the Constitution of the United States on substantive due process or equal protection grounds. Judgment was entered entitling plaintiff to $241,801.00 in retirement pay through February 28, 2006, and to retirement pay and benefits thereafter on a continuing basis.

In September 2006, plaintiff filed the pending motion for attorneys' fees. As required under EAJA, plaintiff supplied with his application supporting documentation itemizing services provided, number of hours spent on each of the services and the rate of fees charged. In its response, defendant intimated that plaintiff did not pay at least a portion

of the fees requested. In reply, plaintiff provided an affidavit responding to defendant's allegation and further detailing that attorneys David P. Sheldon, Philip Sundel, and Raymond J. Toney represented plaintiff. Plaintiff also provided their status and usual billing rates in the reply brief.

## DISCUSSION

■ In order to be eligible for an attorneys' fee award under the EAJA, the following is required: 1) claimant must be a prevailing party; 2) the government's position was not substantially justified; 3) no special circumstances make the award unjust; and 4) an application must be timely filed with adequate supporting documentation. 28 U.S.C. § 2412(d)(1)(A),(B); *Comm'r, I.N.S. v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

Plaintiff is a "prevailing party" if he succeeded "on any significant issue which achieves some of the benefits sought by the suit." *Owen v. United States,* 861 F.2d 1273, 1274 (Fed.Cir.1988). Plaintiff in this case is a prevailing party within the meaning of EAJA as he prevailed on a significant issue, namely, his right to suspend elimination proceedings pending consideration of his request for retirement in lieu of elimination. Plaintiff was awarded a judgment in the amount of $241,801.00 in retirement pay and benefits and is eligible for continued retirement pay and benefits. The United States does not contest this point. Nor does it present any special circumstances rendering an award of fees unjust. Therefore, we proceed to the two remaining requirements of EAJA, whether the government's position was substantially justified and whether there was adequate documentation supporting plaintiff's application.

*Substantial Justification*

The EAJA places the burden to prove substantial justification upon the government. *See White v. Nicholson,* 412 F.3d 1314, 1315 (Fed.Cir.2005); *Libas, Ltd. v. United States,* 314 F.3d 1362, 1365 (Fed.Cir. 2003); *see also Neal & Co. v. United States,* 121 F.3d 683, 686 (Fed.Cir.1997). To meet this burden, the government must show that its position is " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The government's position must have a "reasonable basis both in law and fact." *Id.*

■ Contrary to the government's contention, we evaluate not only the reasonableness of the government's litigation position but also the reasonableness of the underlying agency action. 28 U.S.C. § 2412(d)(2)(D); *Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991). Defendant cites *Spencer v. NLRB,* 712 F.2d 539, 552–53 (D.C.Cir.1983) for its contrary assertion. *Spencer,* however, as plaintiff points out in his reply brief, was decided prior to the 1985 amendment to EAJA. Settling this question, the amended EAJA states that the position of the United States includes its position during litigation and "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

In plaintiff's cross-motion for judgment on the administrative record, plaintiff outlined nine issues. Of the nine, we granted plaintiff's motion with respect to one, plaintiff's right to suspension of elimination proceedings. Once this issue was resolved, we had no need to address two other issues: whether plaintiff's request for retirement in lieu of elimination was improperly processed; and whether the ABCMR properly declined to credit plaintiff with eleven days of additional service credit. We denied plaintiff's motion on the remaining issues: the characterization of plaintiff's discharge; violation of his right to a fair and impartial hearing; the admissibility of videotape evidence; the consideration of retention factors; and the constitutionality of the sodomy prohibition and the DADT policy.

The Supreme Court has held that, when a case involves multiple stages or segments, rather than segmenting a case for purposes of the substantial justification determination, "only one finding about the justification of [the government's] position" is required. *Jean,* 496 U.S. at 159, 110 S.Ct. 2316. According to *Jean,* "[w]hile the parties' postures on individual matters may be more or

less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Id.* at 161–62, 110 S.Ct. 2316. Subsequent to *Jean*, this court is required to "look at the entirety of the government's conduct," including the underlying agency action that gave rise to the litigation, "and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu*, 948 F.2d at 715. It is in the court's discretion to "weigh each position taken [by the government] and conclude which way the scale tips." *Id.* at 715 n. 4.

Neither the *Jean* court nor the Federal Circuit has explicitly addressed the question whether, in a case involving multiple claims, on most of which the government prevailed, the government may still be found on the whole to be substantially unjustified. *See CEMS, Inc. v. United States*, 65 Fed.Cl. 473, 477 (2005). In *CEMS*, this court examined how other courts have interpreted *Jean* in these circumstances. While some courts interpreted *Jean* to not require the government to be substantially justified in every argument in order to defeat an EAJA award, others found that "the United States cannot escape responsibility for paying EAJA fees unless all its claims were substantially justified." *Id.* at 477–78 (citing *United States v. Jones*, 125 F.3d 1418, 1427 (11th Cir.1997)).

■ We think the better compromised view is expressed by the Fourth Circuit in *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132 (4th Cir.1993). There, the court held that the analysis should focus on determining, "from the totality of circumstances, whether the government acted reasonably in causing the litigation.... In doing so, it is appropriate to consider the reasonable overall objectives of the government and the extent to which the alleged governmental misconduct departed from them." *Id.* at 139. The *Roanoke* court went on to state:

> Thus a more egregious example of misconduct might, even if confined to a narrow but important issue, taint the government's "position" in the entire case as unreasonable, whereas a totally insupportable and clearly unreasonable position by the gov-

ernment on an inconsequential aspect of the litigation might not. Similarly, a broader government position that, considered in a vacuum, would not be clearly egregious might still, in the overall context of the case, constitute an unreasonable position because of its impact. Although an unreasonable stance taken on a single issue may thus undermine the substantial justification of the government's position, that question can be answered only by looking to the stance's effect on the entire civil action.

*Id.*

■ In the present case, defendant prevailed on most of the issues plaintiff raised. If we segmented these issues and considered substantial justification within the limited scope of each of those segmented issues, defendant would be substantially justified as to most issues. Following the guidelines set out in *Jean*, however, we consider the defendant's position based on the totality of circumstances against the position's "impact on the entire civil litigation." *CEMS*, 65 Fed.Cl. at 478. We focus our attention on "the reasonableness of [the government's] position in defending against the suit." *Id.*

■ We begin by evaluating the government's position with respect to the two points on which plaintiff prevailed, namely, retirement benefits and the partial upgrade of his discharge characterization by the ABCMR. As these are the only issues on which plaintiff was successful, if the government's position as to them was substantially justified, we cannot award fees. Plaintiff maintains that the government's position in refusing to suspend his elimination proceedings was not substantially justified because the court, deciding the merits of the underlying action, disagreed with ABCMR's 2004 decision denying his right to suspension and found there to be no authority for declining the suspension. Plaintiff further states that the government's characterization of his discharge as UOTHC was also not substantially justified as evidenced by the fact that the ABCMR disagreed with the characterization and overturned it in its 2004 decision, upgrading it to GUHC. The board found no evidence of ag-

gravating factors necessary for a UOTHC discharge.

Defendant responds that the court's simple disagreement with an agency interpretation on the suspension right is insufficient justification for an award of attorneys' fees. While the court ultimately found the action to be unwarranted, as the government argues, this does not automatically result in an award of fees to the plaintiff. "[T]he Government's position can be justified even though it is not correct." *Pierce*, 487 U.S. at 565 n. 2, 108 S.Ct. 2541. The question "will not be precisely the same as the merits: not what the law now is, but what the Government was substantially justified in believing it to have been." *Id.* at 561, 108 S.Ct. 2541. Although the court held that the Army must comply with its regulations, the court nevertheless endorsed the Army's assertion that the suspension requirement in AR 600–8–24, § VI, para. 4–24a was probably not intended for the accrual of service credit. Defendant, citing *Trahan v. Brady*, 907 F.2d 1215, 1218 (D.C.Cir.1990), thus argues that its position, "while incorrect, might appear correct to a reasonable person." (Def.'s Opp'n to Pl.'s Mot for Att'y's Fees under EAJA at 6–7.)

Nevertheless, we do not see any reasonable basis in law or in fact substantially justifying the government's position on the right to suspension issue. The Army was required by its own regulations to suspend the elimination proceedings following plaintiff's request for retirement in lieu of elimination. Although defendant argued that the suspension requirement was not meant to allow a service member to accrue service credit, this court held that:

> Defendant counters that the suspension requirement was never meant to allow a service member who had not accrued enough active service credit at the time of his request to accrue enough days to retire. It cites no authority for its position. Even assuming this is correct, the Army is not free to disregard its own regulations. It is worth noting, moreover, that, while the suspension requirement was likely not for the purpose of allowing service members to accrue further active service credit,

the Army recognized that such a consequence might result.

*Loomis*, 68 Fed.Cl. at 509. The military failed to comply with its own regulations, *see Murphy v. United States*, 993 F.2d 871, 873 (Fed.Cir.1993), and offered no reasonable explanation for the failure.

There was also no support for the government's contention that the error was harmless and that the proceedings would have been completed within 39 days after a 30–day suspension. The only reasonable basis for determining how much time the board would have taken to process the elimination proceedings is the time it actually took, 64 days. *Loomis*, 68 Fed.Cl. at 509–510. In sum, there was no substantial justification for the government's position.

Defendant has not attempted to justify the Army's position at the board with respect to the characterization of the discharge. We are thus left with two elements of plaintiff's case as to which he was successful. Both in the underlying agency level and at litigation, the government maintained its position of divesting plaintiff of his entitlement to retirement without substantial justification, forcing plaintiff to seek a remedy through this lawsuit.

The question then becomes, was the government's lack of justification as to those two claims sufficiently dramatic in impact that its success as to the other issues can be discounted? We think it can. Although plaintiff sought to launch a broader attack on the underlying military policies on top of seeking the relief of entitlement to retirement, it is not an uncommon litigation strategy to make more claims than what one actually expects to obtain. *See, e.g.,* Dan B. Dobbs, *Reducing Attorneys' Fees for Partial Success: A Comment on Hensley and Blum*, 1986 Wis. L.Rev. 835, 845. Considering the significance of the relief ultimately granted to plaintiff, we believe the mere fact that plaintiff eventually sought to convert the litigation into a broader attack on the military policies should not become a barrier to his receiving an EAJA award. Although the litigation became a vehicle for challenging Army policies toward homosexual conduct in general, from plaintiff's perspective, he obtained the critical

relief he needed. We conclude that on the whole, the government's position was not substantially justified.

*Adequacy of Supporting Documentation*

■ The last requirement to be eligible for an EAJA award is submission of supporting documentation. A claimant under the EAJA is required to submit with an application "an itemized statement ... stating the actual time expended and the rate at which fees and other expenses are computed." 28 U.S.C. § 2412(d)(1)(B). Plaintiff does not seek an increase to the statutory cap of $125.00 per hour. Defendant contends that plaintiff is not eligible for an EAJA award because it is unclear whether plaintiff actually incurred the costs being requested. Defendant first argues that "[p]laintiff does not establish that he incurred any of the attorney fees he seeks." (Def.'s Opp'n at 4.) Defendant, citing *Alaskan Arctic Gas Pipeline Co. v. United States*, 19 Cl.Ct. 211, 219 (1990), claims that "[e]vidence that an applicant incurred fees and expenses includes invoices or canceled checks that show that the applicant paid those fees." (Def.'s Opp'n at 3.) Defendant suggests that plaintiff may not have incurred the fees because at least some portion of the fees may have been paid by the Servicemembers Legal Defense Network ("SLDN"). Defendant makes this argument based on an article dated July 20, 2003 by George Edmonson, *Lawsuit Challenges Military's Gay Policy*, in the Atlanta Journal–Constitution to the effect that, "Steve Ralls, director of communications for the Servicemembers Legal Defense Network, which assists those affected by 'don't ask, don't tell,' said Loomis' case is only the beginning of a new round of assaults on the policy and prohibition of sodomy for anyone in the service." (Def.'s Opp'n, Attach. 1.)

In reply, plaintiff submitted a sworn and itemized statement showing a breakdown of services provided by his attorneys with the number of hours spent on each of those services as well as the hourly rate charged. Plaintiff further supplied the names, status and the usual billing rates of three attorneys who represented plaintiff.

While plaintiff could not recover fees paid by others, *see Alaskan Arctic*, 19 Cl.Ct. at 219, there is no evidence that anyone other than plaintiff paid the fees. The article defendant cites does not directly support the allegation that SLDN paid any of the attorneys' fees, or, more particularly, that it paid the fees claimed. The article mentions that SLDN "assists those affected by 'don't ask, don't tell'" policy, but it does not state that SLDN paid plaintiff's attorneys' fees. (Def.'s Opp'n, Attach. 1.) Furthermore, plaintiff affirmatively states that SLDN merely "played a minor consulting role" reviewing "one draft of one opposition brief." (Pl.'s Reply Brief in Support of Mot. For Att'ys' Fees at 2.) Plaintiff further avers that his motion for attorneys' fees "contained no request for payment for any work performed by SLDN." (Pl.'s Reply at 2.)

Moreover, the present case is distinguishable from *Alaskan Arctic*. In that case, plaintiffs were denied an EAJA award due to lack of specificity. The court noted that "[t]he affidavits submitted by [plaintiffs] do not contain any information whatsoever to show who paid the legal fees, such as invoices or cancelled checks." *Alaskan Arctic*, 19 Cl.Ct. at 219. There, plaintiffs had submitted a "Statement of Legal Fees" consisting of "a generalized, bland ... assertion divided into three lump sum categories" merely stating the gross number of hours worked, the rates charged, who performed the tasks, and the gross value of incurred fees. *Id.* at 218.

Unlike the present case, *Alaskan Arctic* involved multiple plaintiffs, some of whom were disqualified under EAJA from applying for fees. Plaintiffs in *Alaskan Arctic* failed to provide any information regarding whether any portion of the hours indicated were paid by those disqualified plaintiffs. *Id.* at 218–9. In that context, the court sought such documents as invoices or canceled checks, which would allow it to distinguish payments made by those plaintiffs eligible under EAJA. *Id.* at 219. Here, we have one plaintiff, who is otherwise eligible under EAJA, and there is no reason to require extra documentation to show whether fees are claimed for anyone other than the plaintiff.

Defendant further argues that plaintiff cannot establish eligibility because plaintiff's

application lacks any contemporaneous evidence of the names, status and usual billing rates of the attorneys who represented plaintiff. Defendant cites *Owen*, to argue that an EAJA application "must provide contemporaneous records of the status and usual billing rates of the attorneys who spent time on a case, in order to determine the reasonableness of the fees claimed." (Def.'s Opp'n at 4.)

As we explained above, plaintiff, in his reply, has supplied the names of his attorneys, their status and their usual billing rates. Although this settles the matter defendant raises, it is worth noting that even if plaintiff has not supplied such names and usual rates of attorneys, *Owen* is distinguishable.[2]

In *Owen*, plaintiff submitted a form showing the total amount of the bill of costs, the total administrative support cost (total number of hours multiplied by $35 per hour), the total hours spent on research and brief preparation by the senior counsel, and the total hours spent on research and preparation of the brief by the associate counsel. *Owen*, 861 F.2d at 1275. The *Owen* court found plaintiff's documentation insufficient: "contemporaneous records of the exact time spent by attorneys on a case, their status and usual billing rates, and a breakdown of expenses" were essential to support a claim under EAJA. *Id.*

In reaching its conclusion, *Owen* cited *Naporano Iron and Metal Co. v. United States*, 825 F.2d 403, 404 (Fed.Cir.1987). In *Naporano*, the court also held claim documentation insufficient when it merely showed periodic billings "generally indicating the total billing for the month and allocable 'Disbursements' for the billed period." *Naporano*, 825 F.2d at 404. The *Naporano* court reasoned that it could not "determine whether the hours, fees and expenses, are reasonable for any individual item" without such itemized statement. *Id.* Defendant appears to interpret this holding in *Owen*—the requirement of records showing status and usual billing

rates of attorneys—as a general principle to be applied to all EAJA applications.

The documentation provided to us with plaintiff's application, however, is distinguishable from that provided in *Owen* and *Naporano*. Plaintiff attached an itemized statement showing a breakdown of services provided, the specific dates and hours spent for each of those services, and the hourly rate charged. This documentation is much more specific than that deemed insufficient in the cases cited by defendant. Furthermore, in both *Owen* and *Naporano*, plaintiffs sought an increase of the statutory cap of $75 per hour, suggesting a heightened need for documentation. *See Owen*, 861 F.2d at 1275; *Naporano*, 825 F.2d at 404. No such increase is sought here. In *TGS International, Inc. v. United States*, 983 F.2d 229, 230 n. 1 (Fed.Cir.1993), moreover, the court noted that a sworn and itemized computation showing the date, hours expended and an identification of the work done in each time increment was "sufficient to determine the reasonableness of the charges." Such documentation is precisely what we have before us—a sworn statement including an itemized computation of each service rendered showing the dates and hours expended. Thus, we find that plaintiff has met all statutory requirements, and is eligible for a fee award under the EAJA.

*Reasonableness of the Fee Award*

■ The United States argues that even if plaintiff is eligible for an award under EAJA, the court should exclude the fees attributable to claims upon which the government prevailed on much the same grounds that it argues that its position was substantially justified. Plaintiff won a judgment in the amount of $241,801.00 in retirement pay and an entitlement to further retirement pay and benefits on a continuing basis. In bringing the lawsuit, however, plaintiff attempted to achieve a broader result. In addition to obtaining an entitlement to retirement, plaintiff also sought to set aside the characterization of his discharge and, in doing so, strike two

---

2. Defendant also makes an argument that some of the hours claimed by plaintiff, including "FOIA Document Procurement" and preparation of motions for extension of time, are excluded from EAJA, although it cites no language in the statute as a legal basis to support the assertion. Thus, we find defendant's argument unpersuasive.

Army policies, the sodomy prohibition and DADT on constitutional violation grounds. Defendant argues that plaintiff's challenge with respect to the characterization of his discharge, a fair and impartial hearing before the ABCMR, the admissibility of videotape evidence, failure of the board to consider retention factors, and constitutional violations regarding the DADT policy, were unrelated to plaintiff's challenge to entitlement to retirement pay, the only monetary claim on which plaintiff prevailed. Citing *Hensley v. United States*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), defendant claims that hours spent pursuing other issues should be excluded.

Our inquiry under EAJA does not end at determining that plaintiff met all statutory requirements for eligibility. Once eligibility is established under EAJA, the court must determine "what fee is reasonable." *Jean*, 496 U.S. at 160, 161, 110 S.Ct. 2316. Although *Jean* dealt with a slightly different issue—whether a fee award under EAJA for fee litigation requires a second finding of substantial justification for the government's position in the fee litigation itself—the process of determining reasonableness of a fee award discussed there is worth noting. Specifically, *Jean* describes this task as "essentially the same as that described in *Hensley*." *Jean*, 496 U.S. at 161, 110 S.Ct. 2316.

In *Hensley*, the Supreme Court examined the standard for award of attorney fees under 42 U.S.C. § 1988. 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. There, plaintiffs originally submitted a three-count complaint, but amended it twice and ultimately raised only one count alleging constitutional violations in six general areas of treatment at a forensic unit. At trial, constitutional violations were found in five of the six areas of treatment. *Id.* at 427, 103 S.Ct. 1933. The district court awarded attorney fees to plaintiffs and refused to eliminate hours spent on litigating unsuccessful claims. *Id.* at 428, 103 S.Ct. 1933.

The Supreme Court in *Hensley* distinguished cases in which a lawsuit is composed of "distinctly different claims for relief ... based on different facts and legal theories" from cases in which plaintiff's claims involve "a common core of facts or will be based on related legal theories." 461 U.S. at 434–35, 103 S.Ct. 1933. In the former, the *Hensley* Court stated that "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved,'" and therefore could be excluded. *Id.* at 435, 103 S.Ct. 1933. In the latter case, however, it "cannot be viewed as a series of discrete claims," and the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* In such a case, the Court suggested the following guidelines:

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. *See Davis v. County of Los Angeles*, [8 Empl. Prac. Dec. (CCH) ¶ 9444, at 5049, 1974 WL 180 (C.D.Cal.1974)]. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Id.* at 435–436, 103 S.Ct. 1933.

Contrary to what defendant suggests, the several issues presented by plaintiff are not distinctly different claims. All of plaintiff's issues, including the Army's improper pro-

cessing of plaintiff's request for retirement in lieu of elimination, his claim of improper procedure and his claims for constitutional violations, arise from "a common core of facts." *Id.* at 435, 103 S.Ct. 1933. Thus, we need not divide the portion of fees spent on separate issues as *Hensley* suggests for distinctly different claims. *Id.* at 434–35, 103 S.Ct. 1933. The question, instead, is the degree of success obtained by plaintiff.

According to defendant, plaintiff only achieved partial or limited success and thus is not entitled to an award of all of the fees being requested. Defendant further claims that, because plaintiff failed to provide documentation demonstrating which portion of his billing records represent hours spent on the issue on which he prevailed, it is impossible to distinguish the portion of the requested fees attributable to claims from unsuccessful ones. Defendant argues, thus, that plaintiff's claim should be denied altogether for lack of specificity in supporting documentation for the application or, at the least, reduced pro rata. We have already dealt with the issue of documentation. We need only examine whether the degree of success plaintiff achieved renders an award based on total hours spent unreasonable.

As we have already noted, the remedy plaintiff sought was not limited to the judgment he received. Most particularly, the court declined to hold that the two military policies, the sodomy prohibition and the DADT, violated the Constitution of the United States. Following *Hensley*, defendant suggests that plaintiff was therefore only partially successful and that the court should exercise its discretion to reduce the fee amount being requested by plaintiff. *Id.* at 436, 103 S.Ct. 1933.

We disagree. The fee award is not reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435. *Hensley* only provides a broad guideline in exercising discretion to determine the reasonableness of a fee award, to distinguish cases with "excellent results" from cases with "partial or limited success." *Id.* at 435–436, 103 S.Ct. 1933. It does not, however, present further explanation as to what would generally constitute an excellent result. The only suggestion *Hensley* makes is that "had respondents prevailed on only one of their six general claims, ... a fee award based on the claimed hours clearly would have been excessive." *Id.* at 436, 103 S.Ct. 1933.

We decline strictly to apply the suggestion of *Hensley* to the present case. As the *Hensley* court itself points out, "[t]here is no precise rule or formula for making these determinations." *Id.* at 436, 103 S.Ct. 1933. "The court necessarily has discretion in making this equitable judgment." *Id.* at 437, 103 S.Ct. 1933. More important than the number of claims on which plaintiff prevailed is "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S.Ct. 1933. Depending on the facts of a case, "it is possible to achieve more than partial or limited success even where an applicant did not receive all of the relief requested." *Keeton Corrections, Inc., v. United States,* 62 Fed.Cl. 134, 138 (2004). As *Hensley* stated, "the result is what matters." 461 U.S. at 435, 103 S.Ct. 1933. In this case, plaintiff received $241,801.00, and is entitled to retirement pay and benefits on a continuing basis. We view the result as much closer to being "excellent" than "partial or limited success." *Id.* at 435–436, 103 S.Ct. 1933. It is not limited in light of "the scope of the litigation as a whole." *Id.* at 440, 103 S.Ct. 1933.

We are influenced in this respect by two factors: the total number of hours plaintiff claims is very modest, considering the relative complexity of the issues; and plaintiff is not seeking more than the statutory cap of $125.00 per hour. Plaintiff seeks fees for a total of 185 hours of work. Plaintiff paid more than what is being requested. The total amount plaintiff seeks, $23,125.00, is less than ten percent of the judgment amount of $241,801.00, not including the continued payment. In light of these circumstances, we conclude that the attorneys' fees requested by plaintiff are reasonable. We see no reason to reduce the fees merely because plaintiff did not prevail on all the issues he raised. Nor do we see any other reason to reduce the fees plaintiff requests.

Plaintiff did not engage in any conduct which "unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C). Therefore, we grant plaintiff $23,125.00 in attorneys' fees and costs under EAJA.

## CONCLUSION

Plaintiff's Motion for Attorneys' Fees is granted in full. The Clerk is directed to enter judgment for attorneys' fees and costs in the amount of $23,125.00.