# United States Court of Appeals for the Federal Circuit

2003-5076, -5080, 2005-5167

BILL HUBBARD (individually and doing
business as Bill Hubbard Associates),

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

Steve McNichols, McNichols Randick O'Dea & Tooliatos, LLP, of Pleasanton, California, argued for plaintiff-cross appellant. Of counsel was Leslie A. Baxter.

Kenneth M. Dintzer, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director. Of counsel were Harold D. Lester, Jr., Assistant Director, Nancy Kim and John N. Kane, Jr., Attorneys.

Appealed from: United States Court of Federal Claims

Senior Judge Loren A. Smith

# United States Court of Appeals for the Federal Circuit

2003-5076, -5080, 2005-5167

BILL HUBBARD (individually and doing
business as Bill Hubbard Associates),

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED:    March 20, 2007

_____

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

In this government contract case, in which the Court of Federal Claims held that the government had breached the contract, the contractor's cross-appeal challenges the court's ruling that he had not proven that the government's breach had resulted in lost profits for him.  The government's appeal challenges the district court's award to the contractor, under the Equal Access to Justice Act, 28 U.S.C. § 2412, of attorneys fees of $110,000 in a case in which the contractor recovered damages of $400.

We affirm the denial of lost profits damages, vacate the attorney fees award, and remand the case to the trial court to reconsider an attorney fees award under the standard we have described.

I

This case stems from a 1984 contract under which the cross-appellant Bill Hubbard ("Hubbard") agreed to build and operate a mini-storage facility at a naval air station. The Navy agreed to provide the personnel to operate the facility and a rental office known as the Rent All Center. The financial arrangements were that Hubbard would give the Navy 17.5% of the business' gross revenue and retain the rest.

Tensions arose between the parties in 1993 when Captain Al Gorthy, Jr. became the new commander of the base. Despite Hubbard's objection, Captain Gorthy moved the Rent All Center to a new location about two miles from the facility. Captain Gorthy also took other actions relating to the facility, described below, to which Hubbard objected.

In 1995, Hubbard filed suit in the Court of Federal Claims seeking damages for breach of contract. He contended that moving the Rent All Center violated the Navy's contractual obligation to provide an on-site rental office. Hubbard v. United States, 52 Fed. Cl. 192, 194 (2002). Hubbard also contended that the Navy breached the contract by ending phone service to the rental facility before it was moved; reducing the hours of the Rent All Center; failing to post signs notifying customers of the new office's location; allowing firefighters to conduct a training exercise at the storage facility site; and allowing other contractors to park at the storage facility, which damaged a concrete slab on which Hubbard planned to build another storage building. Id.

After a trial, the court held that Captain Gorthy's decision to move "the Rent All Center breached both the implied duty to make reasonable decisions and the implied covenant of good faith and fair dealing," id. at 196—a ruling not challenged in this appeal. The court found that Captain Gorthy's "stated reasons for the move were pretextual, and that the move was engineered in bad faith, without regard, indeed, with deliberate and bad faith disregard, for the legitimate business interests of Mr. Hubbard." Id. The court also found that the Navy's permitting a fire drill at the storage facility and parking by other contractors on the slab breached the contract. Id. at 198. Lastly, the court found that the termination of telephone service, the reduction in office hours, and the delay in posting signs providing notice of the Rent All Center's move did not breach the contract. Id. at 197-98.

At trial, Hubbard sought damages of $627,000—most of which represented profits he allegedly lost as a result of the contract breaches. The court rejected most of his claim because Hubbard had not shown that the breaches had caused his alleged lost profits. Id. at 199-200. It awarded damages of only $400, covering the cost of repaving the concrete slab.

Finally, the court concluded that

> Because of the clear bad faith shown by the Navy in dealing with Mr. Hubbard, Mr. Hubbard has been forced to appeal to this court, after numerous attempts to resolve the case without resort to litigation, because it was impossible to deal reasonably with a business partner that had acted in bad faith. Accordingly, plaintiff is entitled to recover all its attorney costs, fees and expenses related to this litigation, including expert expenses, from the

preparation for the filing of this suit until the current date.

Id. at 200.

The court wrote an additional opinion dealing with the attorney fees issue under the Equal Access to Justice Act. Hubbard v. United States, No. 95-396C, slip op. at 2-3 (Fed. Cl. Aug. 26, 2003) ("Fees Op. 1"). The court first determined that the statutory conditions for awarding a fee were satisfied. The court ruled that the $400 damages it had awarded made Hubbard a "prevailing party" under the Act. It stated that although the Navy's "conduct during the litigation phase of the dispute was generally justified," its pre-litigation bad faith, which "seriously abused Plaintiff's contract rights, and amounted to harassment" and "needlessly forced this matter before the Court," meant that the government's position was not substantially justified. Id. at 4.

In determining the attorney fees, the court multiplied the number of attorney and paralegal hours billed by the rate specified in the Act, adjusted upward to reflect cost-of-living increases based on the Consumer Price Index. Hubbard v. United States, No. 95-396C, slip op. at 2-3 (Fed. Cl. July 14, 2005) ("Fees Op. 2"); Fees Op. 1 at 4. This came to $110,920.59. To this the court added total costs of $14,266.33, for a total attorney fees and costs award of $125,185.92.

II

Hubbard's claim of lost profits damages was based upon two items of evidence. First, he presented a study by his expert, Mr. O'Keefe, that purported

to show what the business' profits would have been had there been no breach. Second, Hubbard himself testified about the profits he had expected to earn.

The Court of Federal Claims rejected this evidence because it did not establish that the breach of the contract (primarily the moving of the Rent All Center) caused the decrease in earnings that Hubbard attributed to the breach.

The court found that O'Keefe's analysis did "not relate to the actual breach actions," and that based on a review at Hubbard's business records, the "rental revenue on a month-to-month basis varied considerably both before and after the breach, and that no reduction or fall-off in rental revenue can be attributable to the move based on the information before the court." Hubbard, 52 Fed. Cl. at 199-200. The court rejected Hubbard's own analysis for substantially the same reason.

Although a trier of fact perhaps could have concluded that Hubbard's lost profits evidence showed the necessary causal connection between the breach and the losses, it did not compel that conclusion. We have no reason to reject, as contrary to the evidence, the trial court's determination that the necessary causal connection had not been shown.

III

The Equal Access to Justice Act provides that "in any civil action brought by or against the United States . . . a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(a)(1), (d)(1)(A). "For

the purposes of this subsection . . . 'Fees and other expenses' includes reasonable attorney fees."  Id. § 2412(d)(2)(A).  Thus, the "fees and other expenses" that the Act directs to be awarded to a "prevailing party," includes "reasonable attorney fees."

The Act thus is similar to the fee-shifting provision of the Civil Rights Attorney's Fees Awards Act of 1976 ("Civil Rights Act"), 42 U.S.C. § 1988, which provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  The only significant differences between the two provisions are that in the Civil Rights Act the award of attorney fees is discretionary, not mandatory; the requirement that the attorney fees be "reasonable" is contained in the operative provision itself, not in the definitions; and it does not include the "substantially justified" and "special circumstances" provision of the Equal Access to Justice Act.  We do not think, however, that these distinctions justify different results with respect to the issue in this appeal.

A.  The government urges two grounds upon which, it contends, Hubbard is not entitled to any attorney fees.

1.  The government contends that since Hubbard recovered only nominal damages, he cannot receive any attorney fees.  It refers to the statement in Farrar v. Hobby, 506 U.S. 103 (1992), that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."  Id. at 115 (internal citation omitted).

"Nominal damages" ordinarily are awarded where, although the plaintiff has established the merits of his claim, he has not shown any actual damages. The nominal damages, frequently $1 or sometimes $.06, are intended to vindicate the plaintiff's institution of the law suit. In <u>Farrar</u>, in which the Court held that "a civil rights plaintiff who receives a nominal damages award is a 'prevailing party' eligible to receive attorney's fees under 42 U.S.C. § 1988," <u>id.</u> at 105, the nominal damages the plaintiff had recovered were $1, <u>id.</u> at 107. It was in this context that the Court made the statement upon which the government relies relating to no fee recovery where only nominal damages are recovered.

The term "nominal damages" is also sometimes used to describe the situation "where, although there has been a real injury, the plaintiff's evidence entirely fails to show its amount." <u>Black's Law Dictionary</u> 206 (abridged 5th ed. 1983). This was how the Court of Federal Claims used the term in this case, since the $400 that the trial court characterized as "nominal" represented that court's estimate of the actual costs Hubbard had incurred in repairing the concrete slab, for which Hubbard produced no documentary evidence.

Since the $400 damages in this case were not "nominal" in the sense in which the Supreme Court apparently used that term in <u>Farrar</u>, this case does not present the question whether a plaintiff whose $400 damage award is characterized as "nominal" is therefore not entitled to recover attorney fees under the Equal Access to Justice Act.

2. Alternatively, the government challenges, as contrary to the evidence, the trial court's finding that the government's position in the case was not

substantially justified. That was a factual determination that turned in considerable part on credibility determinations—the trial court concluded that Captain Gorthy was not a credible witness—which we are in no position to second guess. We cannot say that the Court of Federal Claims' finding was clearly erroneous or otherwise incorrect.

The government also argues that because Hubbard failed to prove his lost profits (his major damages claim), the government's position must have been substantially justified. Under the Equal Access to Justice Act, however, the substantial justification requirement covers not only the government's position in the litigation but also "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(1)(D)(2)(D); see also Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 967 (D.C. Cir. 2004) ("The government, however, must demonstrate the reasonableness not only of its litigation position, but also of the agency's actions.") (citations omitted).

In the present case, the Court of Federal Claims held in its opinion on damages that the government's "conduct during the litigation phase of this dispute was generally justified; Defendant's arguments had a reasonable basis in law and fact, Defendant did not appear to advance the argument in bad faith, and counsel acted professionally." Fees Op. 1 at 3. However, the Court explicitly held that "Defendant demonstrated bad faith in the conduct that gave rise to the litigation of this case." Id. We have upheld the "bad faith" ruling and that suffices to support the court's determination that, overall, the government's position was not substantially justified.

B.  The principal issues in this appeal are the amount of the fee and the way it was determined.

In <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983), the Supreme Court "clarif[ied] the proper relationship of the results obtained to an award of attorney's fees." <u>Id.</u> at 432.  The Court stated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Id.</u> at 433. After calculating this amount, the court must then consider whether to increase or decrease the fee based on a number of factors, of which "the most critical factor is the degree of success obtained." <u>Id.</u> at 436.  "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." <u>Id.</u>  The Court

> h[e]ld that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988 . . . where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

<u>Id.</u> at 440.

The Court reiterated this principle in <u>Farrar</u>, where it stated, citing <u>Hensley</u>, that "[i]ndeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  506 U.S. at 114 (citing <u>Hensley</u>, 461 U.S. at 436, and <u>Marek v. Chesny</u>, 473 U.S. 1, 11 (1985)).

Although those cases involved the fee-shifting provision of the Civil Rights Act, we see no reason why the foregoing principles there announced should not

be equally applicable to the parallel fee-shifting provision of the Equal Access to Justice Act.

In the present case, the Court of Federal Claims determined the fee award by multiplying the hours spent by the hourly rate—the first step of the Hensley analysis. It did not, however, then proceed to the second step of determining whether there were circumstances that required a reduction in the fee thus calculated—particularly whether such fee would be excessive in light of the results achieved.

As noted, the trial court explained the basis for its attorney fees award as follows: "Because of the clear bad faith shown by the Navy in dealing with Mr. Hubbard, Mr. Hubbard has been forced to appeal to this court . . . . Accordingly, plaintiff is entitled to recover all its attorney's costs, fees and expenses related to his litigation." Hubbard, 52 Fed. Cl. at 200. In other words, the court concluded that because of the government's misconduct in its pre-litigation relations with Hubbard, the latter was entitled to be reimbursed by the government for all of the expenses he incurred, including his attorney fees, in conducting this litigation. Although the court properly considered the government's pre-litigation conduct in determining whether the government's position was substantially justified, such conduct did not make irrelevant Hubbard's lack of success in this case.

Although at trial Hubbard sought damages of $627,000, he recovered only $400—less than 1/10th of 1% of the amount sought. The $110,000 attorney's fee awarded was 275 times the amount of the recovery. The trial court made no attempt to explain why that fee—which on its face seems grossly excessive in

light of the small recovery—could be deemed a reasonable one in the light of "the degree of success obtained." Farrar, 506 U.S. at 114.

"Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award under Hensley v. Eckerhart, 461 U.S. 424 (1983)." Farrar, 506 U.S. at 114. A fortiori, this principle applies in a simple breach of contract suit where attorney fees are sought under the Equal Access to Justice Act. The present case involves only a garden variety contract claim that, unlike civil rights litigation, involves no broad public policy issues and the only relief sought was damages for the loss Hubbard allegedly suffered because of the breach.

C. The government contends that if Hubbard is entitled to any fee it should be $80.11. It calculates this amount by multiplying the total of the fees and costs incurred ($125,000) by the percentage of the damages Hubbard claimed ($625,000) that he actually recovered ($400), or .06%. This mechanical mathematical analysis is inconsistent with the nuanced approach we have determined the trial court should take. Indeed, in Hensley the Court "agree[d] with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.' Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." 461 U.S. at 435 n.11 (internal citation omitted).

D. The government contends that the Court of Federal Claims erroneously determined the amount by which the statutory maximum hourly rate

of $75 was increased to reflect increases in the cost of living, as the statute authorizes. The trial court calculated the hourly rate as $153.18 by multiplying the statutory rate of $75 by 2.04. The latter figure reflected the Consumer Price Index (CPI) for April 2003 of $197.31, divided by the Consumer Price Index for October 1981 of 96.6.

The government argues that the effect of this calculation was improperly to award interest without Congressional authority to do so. The government relies upon Library of Congress v. Shaw, 478 U.S. 310, 314 (1986), and Chiu v. United States, 948 F.2d 711, 719-20 (Fed. Cir. 1991).

The trial court properly used the CPI of October 1, 1981 as the starting point for its calculation. Chiu, 948 F.2d at 718. Although this case was tried in 1996 and most of the attorney fees presumably were incurred and paid in that year or before, the court's use of the higher April 2003 CPI increased the attorney fees beyond what was actually incurred in 1996—an increase the government states in its brief amounted to approximately $15,000. The effect of using the CPI for 2003, whose only connection with the fees was that that was the year in which the fee award was made, was to compensate for the delay in Hubbard's receiving the attorney fees, which constitutes the award of interest on the fee that had been earned earlier. Chiu, 948 F.2d at 719-20.

In denying the government's motion to reconsider the fee award on this ground, the trial court stated that the Equal Access to Justice Act "is silent as to applying cost of living adjustments when awarding litigation costs and fees. In light of this, the Court acted within its discretion in applying the CPI for April

2003." <u>Fees Op. 1</u> at 2. "Although the award of attorney's fees lies within the discretion of the trial court, that discretion does not authorize the court to award prejudgment interest against the United States. In recalculating the attorney fees on remand, the trial court should take this principle into account. Although it may be difficult, or even impossible, to determine the particular year in which particular portions of the fees were earned, that does not justify the court's failure to directly address the problem. The court may be able to do no more than make a rough approximation of when various portions of the fees were earned but it is clear that they all were earned before 2003.

E. In sum, the Court of Federal Claims' award of attorney fees of $110,000 in a damage suit in which the plaintiff recovered only $400 cannot stand. We therefore vacate the attorney fees award and remand the case for that court to reconsider the award under the standards set forth in this opinion. In connection with redetermining the attorney fees, the trial court also may, if it deems it appropriate, reconsider its award of the other costs.

The trial court has considerable discretion in determining reasonable attorney fees. <u>Cf.</u> <u>Hensley</u>, 461 U.S. at 437. Of course, we intimate no view on what would be an appropriate fee award in this case. That is for the trial court to determine in the first instance.

CONCLUSION

The judgment of the Court of Federal Claims is affirmed insofar as it denied Hubbard lost profits and vacated insofar as it awarded Hubbard

$125,186.92 in attorney fees and costs.  The case is remanded to that court for further proceedings consistent with this opinion.

<u>AFFIRMED-IN-PART, VACATED-IN-PART, and REMANDED</u>