INFORMATION SCIENCES
CORP., Plaintiff,

and

Gallagher, Hudson, Hudson & Hunsberger, Inc. (d/b/a Development InfoStructure or DEVIS), Intervenor–Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–1342C.

United States Court of Federal Claims.

Oct. 25, 2007.*

* On October 29, 2007, this Memorandum Opinion and Order was published with redactions, indicated by the designation ''[deleted].'' The non-redacted version was filed on October 25, 2007 under seal with the Clerk of the United States Court of Federal Claims.

William A. Shook, Preston Gates Ellis & Rouvelas Meeds, LLP, Washington, D.C., for Plaintiff.

Robert S. Ryland, Kirkland & Ellis LLP, Washington, D.C., for Intervenor.

Gregg M. Schwind, United States Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER REGARDING ATTORNEY FEES AND EXPENSES.

BRADEN, Judge.

### I. THE COURT'S PRIOR DECISIONS.

Gallagher, Hudson, Hudson, and Hunsberger, Inc. ("Development InfoStructure" or "DEVIS") was an intervenor in Information Sciences Corporation ("ISC")'s December 22, 2005 protest of the award of the Federal Business Opportunities ("FBO") Contract by the General Services Administration ("GSA") to Symplicity Corporation ("Symplicity"). *See* Order Granting Motion to Intervene, *Info. Scis. Corp. v. United States*, 73 Fed.Cl. 70 (2006) (No. 05–1342).

On September 19, 2006, the court issued a Memorandum Opinion and Final Order determining that the GSA violated certain federal procurement regulations and set aside the December 7, 2005 contract award. *See Info. Scis. Corp. v. United States*, 73 Fed.Cl. 70, 129 (2006). The court ordered GSA, if it intended to proceed with the procurement, to appoint a new Source Selection Authority ("SSA"), review the proposals, pursuant to the Solicitation's terms and applicable FAR regulations, and select an offer representing the "best value" to GSA. *Id.* On October 3, 2006, the Government filed a Motion For Reconsideration.

On February 26, 2007, the court issued a Memorandum Opinion and Order granting-in-part and denying-in-part the Government's Motion for Reconsideration, but determined there was no manifest error regarding the court's disposition as to the Government's violations of the FAR or in the court's decision to order the appointment of a new SSA. *See Info. Scis. Corp. v. United States*, 75 Fed.Cl. 406, 408–11 (2007). On April 27, 2007, the Government's time to appeal expired. *See* RCFC 58.1.

On May 29, 2007, DEVIS filed an application, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA")[1] for attor-

---

1. The EAJA authorizes:

 a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

 28 U.S.C. § 2412(d)(1)(A).

ney fees and costs, together with exhibits ("Int. Ex. A–E"). On July 13, 2007, the Government filed a Response ("Gov't Resp."). On July 30, 2007, DEVIS filed a Reply ("Int. Reply"), together with exhibits ("Int. R. Ex. A–F'"). On August 10, 2007, the court granted the parties leave to file additional briefs. On August 21, 2007, the Government filed a Sur–Reply ("Gov't Sur–Reply"). On September 14, 2007, DEVIS filed a Response ("Resp. Sur–Reply").

## II. INTERVENOR–PLAINTIFF'S EQUAL ACCESS TO JUSTICE ACT APPLICATION.

### A. Intervenor–Plaintiff Is An Eligible Party.

■ Under the EAJA, a party seeking fees must be a "prevailing party" in a civil action. See 28 U.S.C. § 2412(d)(1)(A). "Party" is defined as a corporation with a net worth that does not exceed $7,000,000 and no more than 500 employees at the time the action was filed. See 28 U.S.C. § 2412(d)(2)(B).

DEVIS argues that on December 22, 2005, when the Complaint was filed and on December 29, 2005, when DEVIS intervened, the company did not exceed the financial and employee limitations imposed by the EAJA. See Int. EAJA App. ¶ 4; Int. Ex. A ¶ 3. In support, DEVIS submitted a May 25, 2007 Declaration of DEVIS' President Mr. Peter Gallagher. See id. Subsequently, DEVIS supplemented the EAJA application with: a July 30, 2007 Supplemental Declaration of Mr. Peter Gallagher (see Int. R. Ex. A); 2006 and 2005 DEVIS Financial Statements, prepared by McGladrey & Pullen, Certified Public Accountants (see Int. R. Ex. A, att. 1); DEVIS Certificate of Incorporation (see Int. R. Ex. A, att. 2); a copy of DEVIS' 2006 federal income tax returns (see Int. R. Ex. A, att. 4); a July 30, 2007 Declaration of Mr. Rodney L. Saunders, Certified Public Accountant and Branch Partner at McGladrey & Pullen (see Int. R. Ex. B); a July 30, 2007 Declaration of Mr. Martin Hudson, DEVIS' Chief Financial Officer (see Int. R. Ex. C); a

copy of DEVIS' 2005 federal income tax returns (see Int. R. Ex. C, att. 2); an itemized list of DEVIS' attorney expenses incurred in the underlying litigation (see Int. R. Ex. E); and a copy of the policies and standard charges for various legal services performed by DEVIS' counsel, Kirkland & Ellis, LLP (see Int. R. Ex. F).

The Government counters that DEVIS failed to establish that it is an eligible "party," because a "plaintiff is required to provide detailed records that prove its allegation that it satisfied the EAJA size limitations on the day that the complaint was filed," and a narrative affidavit, without further evidence, is not enough to support an EAJA application.[2] See Gov't Resp. at 3–4 (citing Fields v. United States, 29 Fed.Cl. 376, 382 (1993), aff'd, 64 F.3d 676 (Fed.Cir.1995) (requiring a party requesting fees under the EAJA present sufficient evidence for the court to ascertain and verify the parties' net worth)); see also Al Ghanim Combined Group Co. v. United States, 67 Fed.Cl. 494, 496 (2005) (maintaining that a qualifying party under the EAJA satisfy net worth limitations). The Government considers the May 25, 2007 Gallagher Declaration insufficient to demonstrate DEVIS' net worth. Id. at 4–5 ("A conclusory affidavit without supporting evidence is inadequate to establish such 'party' status.") (citing Fields, 29 Fed.Cl. at 382). The United States Court of Appeals for the Federal Circuit, however, has held that so long as an EAJA applicant pleads jurisdictional requirements in an initial application, the applicant may "supplement [the EAJA] filing after the thirty-day time limitation to set forth a more explicit statement about his net worth." See Bazalo v. West, 150 F.3d 1380, 1383–84 (Fed.Cir.1998) ("We find that Bazalo's statement that he is a prevailing 'party' satisfies the eligibility requirement for jurisdictional purposes.... Because he met the jurisdictional requirements of the EAJA statute, Bazalo could supplement his filing after the thirty-day time limitation to set forth a more explicit statement about his net worth."). Therefore, because DEVIS plead-

---

**2.** The annual corporation financial review relied on in the Declaration of Mr. Peter Gallagher was "inadvertently omitted" from the EAJA applica-

tion, but was attached to the Reply. See Int. Reply at 5–6; see also Int. R. Ex. A, att. 1; Int. R. Ex. B, att. 1; Int. R. Ex. C, att. 1.

ed eligibility in the May 29, 2007 EAJA Application, DEVIS' July 30, 2007 supplemental materials may be considered by the court.

The Government also maintains that DEVIS' net worth should include "[t]he assets and liabilities of [Gallagher, Hudson, Hudson, and Hunsberger, Inc.], and perhaps its principles[.]" *Id.* at 5 (citing *Lion Raisins v. United States*, 57 Fed.Cl. 505, 510 (2003) (holding that aggregation is necessary "when the underlying litigation pursued by the EAJA claimant substantially benefitted another party, or if the claimant was not the real party in interest to the underlying litigation."")); *see also Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 673–74 (6th Cir.1992) (holding that the net worths of members of a trade organization should be aggregated when determining whether the organization is eligible for an award under EAJA). Likewise, the Government contends that, because DEVIS was a subcontractor to two larger companies, both of which were touted to GSA as part of the "DEVIS team," the net worth of the two larger companies should be aggregated. *See* Gov't Sur–Reply at 4; *see also Caremore, Inc. v. NLRB*, 150 F.3d 628, 630 (6th Cir. 1998) (declining to aggregate where the applicant, although controlled by an individual owning other assets through a common corporate parent, "clearly was litigating on its own behalf[.]"); *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir.1991) (aggregating an association's members' assets because they were liable for plaintiff's attorney fees).

In the court's judgment, the plain language of the EAJA, however, does not authorize aggregating the net worth of DEVIS' affiliated companies. *See* 28 U.S.C. § 2412(d)(2)(B)(ii) ("'party' means ... any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed[.]"); *see also Lion Raisins*, 57 Fed.Cl. at 510 ("The government's argument ... conflicts with the plain language of the statute, which expressly lists

as eligible for fees any association ... the net worth of which did not exceed $7,000,000 ....") (citing *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 600 (D.C.Cir.1998) ("[A]n association is eligible for a fee award without regard to the eligibility of its members ... when it sues for injury to the association itself.")); *Tex. Food Indus. Ass'n v. USDA*, 81 F.3d 578, 581 (5th Cir.1996) ("We are unpersuaded ... that EAJA's special eligibility rule for agricultural cooperatives and non-profit organizations is evidence of an implicit aggregation rule. Neither the statute nor its legislative history suggest that the special eligibility rule for agricultural cooperatives and non-profits was motivated by concerns about ineligibility resulting from the aggregation of employees and assets."). For this reason, the United States Court of Federal Claims has denied aggregation where "certain members of [the plaintiff company's] family have ownership interests in [other] companies, [but] each company has its own set of books, tax returns, insurance policies, workers compensation policies, and bank accounts, and at no point are combined for any type of reporting internally or externally." *Lion Raisins*, 57 Fed.Cl. at 510. In such an arrangement, the "EAJA claimant [did not] substantially benefit ... another party, [and] the claimant was ... the real party in interest to the underlying litigation." *Id.*

In this case, the court has determined that the relationship between DEVIS and so-called "working partners" is even more attenuated than that in *Lion Raisins*. DEVIS does not have a formal legal or contractual relationship with any other entity. *See* Int. R. Ex. A. DEVIS is not a joint venture and does not have overlapping management nor ownership with another entity. *See* Int. R. Ex. A. DEVIS receives no income from other companies. *See* Int. R. Ex. A. No other entity is responsible for funding DEVIS' legal proceedings in the United States Court of Federal Claims. *See* Int. Reply at 9–10. Even if DEVIS had some unstated or implicit contractual relationship with so-called "working partners" (*see* Gov't Resp. at 6), mere affiliation does not require net worth aggregation. *See Lion Raisins*, 57 Fed.Cl. at 510 ("While [Plaintiff's affiliated companies] may profit from plaintiff's ability to

perform government contracts, even the more restrictive formulations of EAJA eligibility would not require aggregation for this type of attenuated benefit from the underlying litigation.").

The court also rejects the Government's related argument that DEVIS is not the real party of interest. *See* Gov't Resp. at 5. Whether DEVIS is a real party of interest is an issue of standing, which the Government neither challenged during the merits of the bid protest nor on reconsideration. Nevertheless, since standing is jurisdictional, it may be raised at any juncture. *See Fuji Photo Film Co. v. ITC*, 474 F.3d 1281, 1289 (Fed.Cir.2007) ("Article III standing is jurisdictional"). In this case, however, the Government has proffered no evidence to support allegations that DEVIS "pay[s] and pass[es] on the bulk of its profits to company owners," presumably profits that never appear on the company balance sheet. *See* Gov't Resp. at 3. Likewise, the Government's contention that DEVIS is not "the real party in the underlying litigation," because it is a closely-held company is unsupported as a matter of law and is irrelevant. *See* Gov't Sur–Reply at 3. As the July 30, 2007 Supplemental Declaration of DEVIS' President states:

> DEVIS is not the predecessor of any other entity nor does it have a predecessor entity. DEVIS has no 'affiliated entities,' subsidiaries, parent corporations, partners, external directors or shareholders, equity interest in another entity, and is not party to any joint ventures or other legal entities, nor has it had any such affiliations since it was incorporated in 1992.

*See* Gallagher Decl. ¶ 8 at 3 (Int. R. Ex. A).

In addition, to the extent that the Government is attempting to define "real party in the underlying litigation" as a company's shareholders, that contention also has no basis in law. The plain language of the EAJA provides that a company's net worth, not the net worth of the company's constituent members, is measured for purposes of eligibility. *See* 28 U.S.C. § 2412(d)(2)(B) ("any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed"); *see also Tex. Food Indus. Ass'n*, 81 F.3d at 582 ("In order to deny the benefits of an EAJA award to an association's wealthy, ineligible members, [Defendant] would have us unfairly exclude from EAJA's clear reach an association's eligible members.").

■ For these reasons, the court has determined that DEVIS established a net worth that did not exceed $7,000,000 either at the time of the December 22, 2005 filing of the Complaint or at DEVIS' December 29, 2005 intervention.[3] *See* 28 U.S.C. § 2412(d)(2)(B) (the EAJA net worth requirements).

## B. Intervenor–Plaintiff Is A "Prevailing Party."

■ It is well-settled that an intervenor may be a "prevailing party" under the EAJA. *See Nat'l Wildlife Fed'n v. FERC*, 870 F.2d 542, 543–44 (9th Cir.1989) (holding that an intervenor may be a prevailing party entitled to attorney fees under 28 U.S.C. § 2412); *see also Delta Air Lines, Inc. v. CAB*, 505 F.2d 386, 388 (D.C.Cir.1974) (intervenors are treated "like any other prevailing or losing party" in appeals from agency decisions). Because DEVIS made a significant contribution to this bid protest and DEVIS essentially was granted the relief requested, the court has determined that DEVIS is a "prevailing party." *See Am. Trucking Ass'ns, Inc. v. ICC*, 666 F.2d 167, 169 (5th Cir.1982) (holding an intervenor who made significant contributions to successful litigation was entitled to costs under 28 U.S.C. § 2412).

---

3. DEVIS' financial statement for 2005 shows: the total assets were [deleted]; the total liabilities were [deleted]; and the net worth was [deleted]. *See* Int. R. Ex. A (Declaration Of Authenticity by Mr. Peter Gallagher, DEVIS CEO); Int. R. Ex. B (Declaration Of Authenticity by Mr. Rodney L. Saunders, Certified Public Accountant); Int. R. Ex. A, att. 1 at 2 (2005 Company Balance Sheet).

DEVIS' Financial Statement for 2006 shows: the total assets were [deleted]; the total liabilities were [deleted]; and the net worth was [deleted]. *See* Int. R. Ex. A (Declaration Of Authenticity by Mr. Peter Gallagher, DEVIS CEO); Int. R. Ex. B (Declaration Of Authenticity by Mr. Rodney L. Saunders, Certified Public Accountant); Int. R. Ex. A, att. 1 at 2 (*2006 Company Balance Sheet*).

## C. The Government's Position Was Not Substantially Justified.

The Government argues that DEVIS' apparent success "does not render the Government's arguments not substantially justified." Gov't Resp. at 7; *see also Pierce v. Underwood,* 487 U.S. 552, 569, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ("[T]he fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified."). Specifically, the Government contends that since the court's resolution of the majority of the challenges to the contract award were in favor of the Government, the Government's litigation position was substantially justified. *See* Gov't Resp. at 8–11. In addition, the Government argues that the CO's decision to establish a competitive range without price was within the CO's discretion and could have been upheld by the court. *Id.* at 12 (citing *Harris Data Commc'ns, Inc. v. United States,* 2 Cl.Ct. 229, 242 (1983) ("The hurdle is that the determination of unacceptability rests within the Contracting Officer's discretion and must be upheld if rational.")). Furthermore, the Government reasons that, even if price had been properly considered by the CO, the outcome of selection likely would have been the same, because DEVIS could not show that it had a "substantial chance" to be awarded the contract but for the error. *See* Gov't Resp. at 14–15.

Next, the Government argues that the SSA was permitted by FAR § 15.308 to "adopt wholesale" the evaluations of others in making the decision, because of the highly deferential standard afforded to "best value" determinations under APA review. *See* Gov't Resp. at 15–16 (citing *Computer Sci. Corp. v. United States,* 51 Fed.Cl. 297, 321 (2002) (concluding that the SSA only is required to review past performance evaluations to ensure accuracy, compare the results, and then form an independent conclusion)). In fact, the SSA exercised independent judgment when he personally reviewed the Majority and Minority Reports. *See* Gov't Resp. at 18–19 (citing AR 2542–43).

Finally, the Government contends that portions of the court's opinion are "at odds with its ultimate holding[s]." *Id.* at 19–20. Here, the Government cites the court's recognition that the SSA had authority to award the contract and that GSA had a rational basis to raise the technical ratings to Acceptable. *Id.* at 19 (citing *Info. Scis.,* 73 Fed.Cl. at 99, 104–05). Nevertheless, the court determined that the Administrative Record did not sufficiently evidence the SSA's exercised independent judgment. *Id.* The Government argues that these findings suggest the Government's litigation position was substantially justified. *Id.* at 20. The Government also concedes that "[t]he [United States Court of Federal Claims] was careful to emphasize that [the CO's failure to include price when excluding proposals from the competitive range] was *not* evidence of the contracting officer acting unreasonably or irrationally." *See* Gov't Sur–Reply at 7 (emphasis in original) (citing *Info. Scis.,* 73 Fed.Cl. at 115); *but see id.* ("The issue here is not whether discretion was abused or whether the CO acted unreasonably in accepting Symplicity's proposal, but whether the CO considered price when setting the competitive range, as required by FAR § 15.306(c)."). The Government claims that it was substantially justified in defending the SSA's decision in raising Symplicity's rating, because this error did not evidence irrationality or unreasonableness on the part of the SSA. *See* Gov't Sur–Reply at 7 (citing *Info. Scis.,* 73 Fed.Cl. at 120–22).

DEVIS responds that it is entitled to an EAJA award, because the court granted the relief that DEVIS requested, and the Government has cited no precedent to deny EAJA fees based on the number of legal issues won or lost. *See* Int. Reply at 11–13.

■ A prevailing party may recover attorney's fees "unless the position of the [G]overnment was substantially justified." *Bowey v. West,* 218 F.3d 1373, 1374 (Fed.Cir.2000) (quoting 28 U.S.C. § 2412(d)). Prevailing party status, however, does not automatically render the Government's position not substantially justified. *See Scarborough v. Principi,* 541 U.S. 401, 415, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (holding that "Con-

gress did not … want the 'substantially justified' standard to be read to raise a presumption that the Government position was not substantially justified simply because it lost the case[.]") (citations omitted). The United States Supreme Court has defined "substantially justified" to mean: "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541 (holding that the Government's position must have "reasonable basis in both law and fact.") (citations omitted); *see also Smith v. Principi,* 343 F.3d 1358, 1362 (Fed.Cir.2003) ("In conducting a 'totality of the circumstances' inquiry, a fact-finder will naturally and properly focus on those circumstances that are 'relevant,' and in particular on any circumstances that may be 'determinative.' ") (citations omitted); *Massie v. United States,* 226 F.3d 1318, 1321 (Fed.Cir.2000) ("As a waiver of sovereign immunity, the EAJA is interpreted narrowly. But this is not a talisman for permitting the [G]overnment to avoid liability in all cases.").

 The Government has the burden to establish "that the position of the United States was substantially justified." *Scarborough,* 541 U.S. at 414, 124 S.Ct. 1856; *see also RAMCOR Servs. Group v. United States,* 185 F.3d 1286, 1288 (Fed.Cir.1999) ("Once a prevailing party satisfies the EAJA requirements … the burden shifts to the Government to show that its litigating position was 'substantially justified.' "). The phrase " 'position of the United States' refers to the [G]overnment's position throughout the dispute, including not only its litigating position but also the agency's administrative position." *Doty v. United States,* 71 F.3d 384, 386 (Fed.Cir.1995) (internal citations omitted); *see also Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991) ("[T]rial courts are instructed to look at the *entirety* of the [G]overnment's conduct[.]") (emphasis added). For this reason, the United States Supreme Court has observed that whether the government's position is substantially justified "is for the district court to [determine],

and thus suggests … deference to the district court upon appeal." *Pierce,* 487 U.S. at 559, 108 S.Ct. 2541.

The United States Court of Appeals for the Federal Circuit has held that "a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis, *or* (2) the procurement procedure involved a violation of regulation or procedure." *Galen Med. Assocs. v. United States,* 369 F.3d 1324, 1329 (Fed.Cir.2004) (emphasis added); *see also* 5 U.S.C. § 706(2)(A) (a reviewing court in a bid protest action shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, *or otherwise not in accordance with law.*") (emphasis added). Therefore, where the Government violates a regulation, that act *ipso facto* is "unreasonable," regardless of the underlying factual justification.[4] In this case, the court acknowledged that the CO is afforded wide discretion; however, "that discretion does not extend to violating the FAR and ignoring an integral factor in the procurement." *Info. Scis.,* 73 Fed.Cl. at 115; 131 Cong. Rec. S. 9991 (July 16, 1985) (Statement of Senator Charles E. Grassley) ("[I]f the agency action that led to the litigation is not substantially justified, a prevailing party could be eligible for an Equal Access to Justice Act award, irrespective of the merits of the Government's arguments once they get to court."). Therefore, errors committed in the procurement process factually may be "reasonable," but "unreasonable" in law. *See Pierce,* 487 U.S. at 565, 108 S.Ct. 2541 (holding that the Government's position should have "a reasonable basis both in law *and* fact") (emphasis added); *see also Chiu,* 948 F.2d at 715 (stating that the proper inquiry is "whether the government's overall position had a reasonable basis in both law and fact.").

The court has determined that the Government's defense of the CO's and SSA's actions in this case was not "substantially justified," because the dispositive issues were the CO's and SSA's violations of FAR § 15.308 and

---

4. Two exceptions to this proposition have been recognized: where the law at issue was later revoked (*see Clemmons v. West,* 206 F.3d 1401, 1403 (Fed.Cir.2000)); and where a novel, but

good faith and credible interpretation of existing law was asserted. *See L.G. Lefler, Inc. v. United States,* 801 F.2d 387, 389 (Fed.Cir.1986). Neither of these exceptions is applicable to this case.

FAR § 15.306(c) that negate a "reasonable basis ... in law[.]" *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541 (quotations & citations omitted); *see also Loomis v. United States*, 74 Fed.Cl. 350, 355 (2006) (holding that the Government's position was not substantially justified where the Government "failed to comply with its own regulations ... and offered no reasonable explanation for the failure[.]") (citations omitted); *see also* 131 CONG. REC. S. 9991 (July 16, 1985) (Statement of Senator Charles E. Grassley) ("[T]he purpose of the [EAJA] is to make Government bureaucrats think long and hard *before* they start an enforcement action.") (emphasis added). For this reason, the United States Court of Federal Claims previously has awarded EAJA attorney fees in a bid protest case where only "6 of the ... 19 claims and 3 of the ... 11 bid items" prevailed, after "over one hundred claims stemming from the same factual core" were dismissed. *See CEMS, Inc. v. United States*, 65 Fed.Cl. 473, 474–78 (2005); *see also Loomis*, 74 Fed.Cl. at 354 (awarding EAJA fees despite the fact that "defendant prevailed on most of the issues plaintiff raised"); *see also Loomis*, 74 Fed.Cl. at 354 (rejecting an approach requiring the court to "[segment] issues and [consider] substantial justification within the limited scope of each of those segmented issues, [so] defendant would be substantially justified[.]") (citing *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir.1993) ("[W]e conclude that when determining whether the government's position in a case is substantially justified, we ... determine, from the totality of circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation.")).

## D. Intervenor–Plaintiff's Application Was Adequately Documented.

The EAJA requires a claimant to submit "an itemized statement" with the application,

"stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B); *see also Loomis*, 74 Fed.Cl. at 356 ("[C]ontemporaneous records of the exact time spent by attorneys on a case, their status and usual billing rates, and a breakdown of expense" are essential to support a claim under EAJA.).

DEVIS has submitted copies of billing statements for legal services rendered and costs incurred in the underlying litigation from December 29, 2005 through February 28, 2007. *See* Int. Ex. C, E. These records itemize: the billable hours and rates of each attorney working on the case; legal services rendered for each billable hour performed; other services performed related to the case; and such costs as copying, computer database research, and facsimile charges. *Id.* Also included is an itemized billing statement from DEVIS' expert witness, Mr. Jimmy J. Jackson. *See* Int. Ex. D. In addition, DEVIS' July 30, 2007 Reply contains a copy of the policies and standard charges for expenses incurred by DEVIS' counsel, Kirkland & Ellis LLP. *See* Int. R. Ex. F.[5] This exhibit provides a basis for the court to determine whether DEVIS' attorneys' itemized expenses were reasonable and proper. *Id.*

Together, this information provides the court with "contemporaneous records of the exact time spent by attorneys on a case, their status and usual billing rates, and a breakdown of expenses." *Owen v. United States*, 861 F.2d 1273, 1275 (1988). The Government, however, objects to the adequacy of documentation with respect to certain fees and expenses. These objections are discussed below in the court's analysis of each element of the EAJA award requested in this case.

---

**5.** These standard expenses include: secretarial and word processing charges; secretarial overtime; travel expenses; telephone expenses; overnight delivery postage charges; messenger charges; fax charges; computerized research service charges; off-site legal file storage charges; document procurement charges; calendar court service charges; library/business research service charges; supply charges; contract attorney and non-attorney charges; and other third party expenditures. *See* Int. R. Ex. F.

The court suggests that contract attorney charges should be counted as "fees" under the EAJA. DEVIS, however, claims no award for contract attorney charges in this case. *See* Int. Ex. C (Kirkland & Ellis periodic invoices itemizing all miscellaneous expenses).

## 1. Attorney Fees.

■ The Government argues that DEVIS' award "must be reduced to reflect the fact that DEVIS did not obtain success on most of its arguments and requested relief." Gov't Sur–Reply at 8–9. In support, the Government cites *Community Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143 (Fed. Cir.1993), a case that allotted the plaintiff "a pro rata portion of its fees and expenses" under "the theory of apportionment." *Id.* at 1146. This "theory of apportionment," however, is not mandatory if an EAJA plaintiff does not prevail on every claim asserted. *See Naekel v. DOT, FAA*, 884 F.2d 1378, 1379 (Fed.Cir.1989) ("We do not consider this an appropriate case for fractional division of the attorney fee award."); *see also Loomis*, 74 Fed.Cl. at 359 ("In light of these circumstances, we conclude that the attorneys' fees requested by plaintiff are reasonable. We see no reason to reduce the fees merely because plaintiff did not prevail on all the issues he raised.").

On the other hand, the United States Court of Appeals for the Federal Circuit has held, in assessing a similar fee-shifting statute, that "apportionment" is to be measured by "the degree of the plaintiff's overall success." *Hubbard v. United States*, 480 F.3d 1327, 1333 (Fed.Cir.2007). For this reason, the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), has advised

> [w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

*Id.* at 435–36, 103 S.Ct. 1933.

Although the United States Court of Appeals for the Federal Circuit recognized that *Hensley* "involved the fee-shifting provision of the Civil Rights Act," our appellate court stated that "we see no reason why the foregoing principles there announced should not be equally applicable to the parallel fee-shifting provision of the Equal Access to Justice Act." *Hubbard*, 480 F.3d at 1333 (citing *Hensley*, 461 U.S. at 435–36, 103 S.Ct. 1933).

Therefore, the threshold inquiry here is whether DEVIS obtained "excellent results." The parties construe this term differently. DEVIS asserts that it obtained "excellent results," because the litigation resulted in a "judicially sanctioned change in the legal relationship of the parties." *See* Resp. Sur–Reply at 9–10 (quoting *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). DEVIS is incorrect that a finding of "excellent results" automatically follows if there is a "judicially sanctioned change in the legal relationship of the parties." *See* Resp. Sur–Reply at 9–10 (quoting *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835). *Buckhannon* provides only that attorney fees *may* be awarded upon such a "judicially-sanctioned change," but does not address the size of those fees or whether, and when, any such fees should be apportioned based on claims vindicated in the underlying case. 532 U.S. at 605, 121 S.Ct. 1835.

The Government counters that DEVIS' award should be reduced, because DEVIS failed to prevail on the bulk of "arguments and requested relief." Gov't Sur–Reply at 8–9. The Government also over-simplifies the meaning of "excellent results," because apportionment is not mandatory if an EAJA plaintiff did not prevail on every claim asserted. *See Naekel*, 884 F.2d at 1379 ("We do not consider this an appropriate case for fractional division of the attorney fee award."); *see also Loomis*, 74 Fed.Cl. at 359 ("In light of these circumstances, we conclude that the attorneys' fees requested by plaintiff are reasonable. We see no reason to reduce the fees merely because plaintiff did not prevail on all the issues he raised.").

DEVIS' February 1, 2006 Motion for Judgment on the Administrative Record requested that the "court ... set aside the [contract award] and ... direct the agency to undertake appropriate corrective action[.]" Int.

Mot. at 3. In DEVIS' April 4, 2006 Post–Hearing Brief, the court was requested to identify and appoint a new SSA and CO to "undertake an independent and comparative evaluation of those proposals remaining in the competitive range and deemed acceptable using the criteria established by the RFP." Int. Supp. Br. at 49. The court's September 19, 2006 Memorandum Opinion and Order provided:

> DEVIS' Motion for Judgment on the Administrative Record [is] hereby GRANTED. In addition, the court GRANTS ... DEVIS'.request for injunctive relief, as follows: (1) The General Services Administration's December 7, 2005 award of Contract No. GST00T05NSC0002 is hereby set aside; and (2) If the General Services Administration would like to proceed with this procurement, it is hereby ordered to appoint a new Source Selection Authority to review the Proposals received in response to Request for Proposals No. TQN–04–RA–0001, pursuant to the Solicitation's terms and conditions and applicable FAR regulations, and to select that offeror for award deemed to represent the best value to the procuring agency.

*Info. Scis.*, 73 Fed.Cl. at 129.

Therefore, in effect, DEVIS achieved *all* the relief sought in the underlying litigation. In addition, DEVIS took no action that unnecessarily protracted the litigation. *See* 28 U.S.C. § 2412(d)(1)(C) (Plaintiff must not engage in conduct that "unduly and unreasonably protract[s] the final resolution of the matter in controversy.").

For these reasons, the court has determined that DEVIS achieved "excellent results" in the underlying litigation, and DEVIS' attorneys should recover fully-compensatory fees. *See Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933 ([T]here is "no precise rule or formula for making these determinations, ... The court necessarily has discretion in making this equitable judgment."); *see also Loomis*, 74 Fed.Cl. at 359 ("We see no reason to reduce the

fees merely because plaintiff did not prevail on all the issues he raised.").

DEVIS' EAJA Application requested $67,445.43 in attorney fees, based on a $160.68 hourly rate. *See* Int. Ex. E. This hourly rate accounts for an increase in the Department of Labor's consumer price index since 1996, resulting in an upward adjustment from the 1996 statutorily authorized cap of $125 per hour. *See* Int. Reply at 24; *see also Cal. Marine Cleaning, Inc. v. United States*, 43 Fed.Cl. 724, 733 (1999) ("Cost of living adjustments are specifically contemplated in the EAJA."); 28 U.S.C. § 2412(d)(2)(A) ("[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."). The Government has not objected to this adjusted rate. *See* Int. Reply at 24; Gov't Resp. at 20–23. The court has determined that the significant increase in the cost of living since 1996 justifies the higher fee claimed and that DEVIS has supplied adequate proof to account for this increase. *See* Int. Ex. E (computing the inflationary increase by (1) determining the consumer price index in March 1996, when the EAJA was amended to allow the $125–per–hour rate, and (2) accounting for the increase in the consumer price index since by taking the average price index over the period of the underlying litigation).[6]

### 2. Expert Fees.

DEVIS also requests reimbursement of $6,750 in awards for services rendered by an expert, Mr. Jimmy J. Jackson. *See* Int. Reply at 24–26; Int. Ex. E (DEVIS' EAJA Application). Mr. Jackson's company, Jackson Consulting, Inc., provides consultation services on government contracts. *See* Int. Ex. D; *see also Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed.Cl. 502, 508 (2003) ("Jimmy J. Jackson [is] a consultant on government con-

---

**6.** DEVIS' EAJA request for attorney fees ($67,-445.43) represents 0.42% of the $15,992,901 contract at issue. *See* AR 2408–11; *see also* Int. Ex. E (DEVIS' EAJA Application); *Loomis*, 74 Fed.

Cl. at 359 ("The total amount plaintiff seeks, $23,125.00, is less than ten percent of the judgment amount of $241,801.00, not including the continued payment.").

tracts."). In this case, Mr. Jackson worked for two days assisting DEVIS' counsel review the Administrative Record and was subject to the Protective Order. *See* Int. EAJA App. ¶ 2; Int. Reply at 25–26.

The EAJA provides that "fees and other expenses" awarded may include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees[.]" 28 U.S.C. § 2412(d)(2)(A).

The Government argues that DEVIS failed to provide sufficient evidence to show that the work Mr. Jackson performed was necessary and his fee was reasonable. *See* Gov't Resp. at 21; *see also Cmty. Heating & Plumbing,* 2 F.3d at 1146 (denying expert fees because the claimant failed to provide "reasonably specific documentation concerning the actual work done by the consultant."); *Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 404 (Fed.Cir.1987) ("Only by knowing the specific task performed can the reasonableness of the number of hours required for any individual item be judged."). DEVIS responds that Mr. Jackson's services were necessary, because he provided expert study, organization, and advice concerning a "record [that] was too large for an attorney to review unassisted." Int. Reply at 25 ("Lotus database files that contained the agency's electronic record of the procurement amounted to more than 365 megabytes of data."). DEVIS further responds that the services rendered were reasonable, because Mr. Jackson worked on the case for only two days and submitted detailed time entries for each day. *See id.* at 26; *see also* Int. Ex. D (itemized billing statement of the expert at $327 per hour).

In light of Mr. Jackson's expertise in reviewing administrative records in bid protests and assistance in preparing for the hearing within a small time-frame, the court has determined that his work was necessary and associated fees, *i.e.,* $6,750, were reasonable. *See* Int. Ex. D (itemized billing statement of the expert); *see also* Int. Ex. E (DEVIS' EAJA Application). Accordingly,

the $6,750 amount claimed for Mr. Jackson's services is included in the total EAJA award.

### 3. Paralegal Fees.

The United States Court of Appeals for the Federal Circuit has held that paralegal expenses may be recovered only as "expenses at cost to the attorneys," and not "as fees." *Richlin Security Serv. Co. v. Chertoff,* 472 F.3d 1370, 1381 (Fed.Cir.2006). In light of the level of proof demanded by *Richlin,* DEVIS has withdrawn a claim for recovery of paralegal fees. *See* Resp. Sur–Reply at 10–11. Accordingly, the amount claimed for "Paralegal Support" ($15,875.00) is not included in the total EAJA award. *See* Int. Ex. E (DEVIS' EAJA Application).

### 4. Miscellaneous Expenses.

Finally, DEVIS requests $12,955.48 in miscellaneous expenses for: computer database research; trademark scans; messenger services; scanned images; standard copies and prints; computer database research; binding; outside computer services; and working meals. *See* Int. Ex. C; Int. Ex. E (DEVIS' EAJA Application).

The Government challenges DEVIS' claim for these expenses, arguing that the EAJA provides recovery only for "reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, and that these expenses must be those customarily charged to a client where the case is tried." *Oliveira v. United States,* 827 F.2d 735, 744 (Fed.Cir. 1987); *see also* Gov't Resp. at 22 ("The EAJA statute provides a non-exclusive list of examples of legal expenses which are recoverable."). Moreover, DEVIS fails to "explain how any of the expenses charged by its law firm meet this standard," and that these charges may only be recovered at cost to the law firm, not at the "inflated rates" charged to DEVIS. Gov't Resp. at 23.

DEVIS responds that the miscellaneous expenses claimed were limited only to the underlying case, necessary, and reasonable in "preparation for trial of the specific case before the court[.]" Int. Reply at 27. DEVIS claims that these expenses were used for: preparation of briefs and exhibits; tran-

scripts in connection with depositions; postage and faxes; overnight deliveries; library and document retrieval services; courier services for obtaining administrative record documents; preparation of graphics for exhibits; and disposal of documents related to the court's protective order. *See* Int. Reply at 27–28. DEVIS states that these expenses are documented by: "a detailed, line item record" of all miscellaneous expenses included in Exhibit E of DEVIS' July 30, 2007 Reply; and a copy of DEVIS' law firm's expense policy, for comparison, in Exhibit F of DEVIS' July 30, 2007 Reply. *See id.* at 28; Int. R. Ex. E, F.

The United States Court of Appeals for the Federal Circuit has observed that the list of recoverable EAJA expenses is not exhaustive, and that "the trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried." *Oliveira*, 827 F.2d at 744. Finally, "[t]he quantum and method of proof of each allowable expense is discretionary with the trial court." *Id.*

DEVIS has submitted exhibits that adequately document each miscellaneous expense incurred. *See* Int. Ex. C (Kirkland & Ellis periodic invoices itemizing all miscellaneous expenses); *see also* Int. R. Ex. E (Kirkland & Ellis line-item record itemizing the date and description of each miscellaneous expense); Int. R. Ex. F (Kirkland & Ellis policy statement listing the typical rate for each expense). These expenses included: copying and binding expenses used for preparation of case briefs and exhibits; court reporter and transcript charges in connection with depositions; postage and fax charges for overnight delivery; library and document retrieval services; courier services for ob-

taining administrative record documents; preparation of graphics for exhibits; disposal of documents related to the Protective Order; and online legal research. DEVIS also has confirmed that these expenses were limited to the underlying case in this court, not the preceding GAO protest. *See* Int. R. Ex. E (itemizing miscellaneous expenses in the underlying case from December 29, 2005 through February 26, 2007, the period in which DEVIS was pursuing the bid protest in this court).

■ The court has determined, however, that DEVIS' request for "overtime meal" and "working meal" expenses should be excluded from the total EAJA award, because these are not necessary and reasonable to the underlying litigation, i.e., are not customarily billed to clients. *See Oliveira*, 827 F.2d at 744 (expenses should be those customarily charged to clients). According to the invoices submitted, these expenses, included with the "overtime expenses," total $1,646.14. *See* Int. Ex. C. Therefore, the court will deduct $1,646.14 from DEVIS' total award.[7]

Finally, the Government claims that miscellaneous expenses are recoverable at cost to the law firm, not at the "inflated rates" charged to DEVIS. *See* Gov't Resp. at 22–23. The Government, however, produced no authority for either this allegation or that an EAJA claimant must provide documentation other than law firm invoices. In fact, it is the practice of the United States Court of Federal Claims to award EAJA awards for miscellaneous expenses based on law firm invoices. *See, e.g., Baldi Bros. Constructors v. United States*, 52 Fed.Cl. 78, 88–89 (2002) ("Plaintiff claims $5,177.62 for copy expenses.... The court has reviewed [Plaintiff's attorney's] invoices and determines that" some of these expenses should be discounted because of duplicate billing.). Even if the Government is correct that miscellane-

7. Subsequently, DEVIS has voluntarily withdrawn its claim for overtime expenses. *See* Resp. Sur–Reply at 10–11; Int. Reply 28. These expenses appear to include secretarial overtime, overtime meals, and overtime transportation. *See* Resp. Sur–Reply at 10–11; Int. Reply at 28; Int. Ex. B, C. Accordingly, these expenses are excluded from the total EAJA award.

The court has determined that the expenses itemized on the invoices add up to *less* than the

$1,773.97 in "overtime expenses" DEVIS originally calculated: overtime meals, working meals, secretarial overtime, and overtime transportation. *See* Int. Ex. C. The total amount for these expenses, according to the court's calculations, is $1,646.14. DEVIS' counsel could not determine how it reached the original $1,773.97 and is deferring to the court's calculation.

ous expenses may only be reimbursed at cost, Kirkland & Ellis LLP's expense policy suggests that the costs itemized on the submitted invoices are filed at actual cost. For example, the firm charges its clients $0.10 per copy, $0.70 per binding, and $0.15 per scanned image, all standard market rates. *See* Int. R. Ex. F. For more variable expenses, such as overnight delivery, messenger services, and online research services, the firm policy states that "[w]e charge clients for the actual cost." [8] *Id.*

Accordingly, the court has determined that the claimed miscellaneous expenses, excluding overtime and meal expenses, should be included in the total EAJA award since these expenses were documented adequately, specific to the underlying case, necessary, and reasonable. *See Oliveira*, 827 F.2d at 744.[9]

### 5. The Total Amount Awarded.

The total amount awarded is set forth in the following table:

| Fee/Expense | Amount Included in Award | Amount Excluded in Award |
| --- | --- | --- |
| Attorney Fees | $67,445.43 | $0 |
| Miscellaneous Expenses | $11,309.34 | $1,646.14 (overtime/meals) |
| Expert Fees | $ 6,750.00 | $0 |
| Overtime/Meal Expenses | $0 | $ 1,646.14 |
| Paralegal Expenses | $0 | $15,875.00 |
| **TOTAL AWARD** | **$85,504.77** | |

### III. CONCLUSION.

For these reasons, DEVIS' Application for fees and expenses, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, is granted, in part. The Clerk of the United States Court of Federal Claims is directed to enter judgment in favor of Intervenor–Plaintiff in the amount of $85,504.77.

**IT IS SO ORDERED.**

---

8. The Government does not contest that the expenses for messenger services, overnight delivery, and online research should be awarded. *See* Gov't Sur–Reply at 11, n. 6.

9. Moreover, the expenses that DEVIS incurred are reasonable, comprising only 4.8% of the total litigation cost in this case. *See* Int. Reply at 28.

